GEORGE SUGARMAN *v.* STATE OF MARYLAND
[No. 7, October Term, 1937.]

*Decided October 29th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Emanuel Gorfine* and *Ellis Levin,* with whom were *Louis M. Silberstein* and *Herbert Myerberg* on the brief, for the appellant.

*Hilary W. Gans, Deputy Attorney General,* with whom were *Herbert R. O'Conor, Attorney General,* and *Philemon B. Coulter, Assistant State's Attorney,* on the brief, for the State.

JOHNSON, J., delivered the opinion of the Court.

Subsequent to his arrest on February 5th, 1937, under circumstances to be hereinafter detailed, George Sugarman was indicted, tried, and convicted in the Criminal Court of Baltimore City on two counts of an indictment, the first of which charged him with having unlawfully in

his possession in Baltimore City on February 5th, 1937, a book of lottery tickets, while in the second count he was charged with unlawful possession at the same time of certain books, lists, slips and records of numbers drawn in a lottery, likewise with books, lists, slips and records of lottery tickets, slips and records of money which had been received, and was to have been received, from the sale of lottery tickets, and by which it was promised and guaranteed that particular numbers, characters and slips would in a certain event and upon the happening of a certain contingency, in the nature of a lottery, entitle the purchaser or holder to receive money, property, and evidence of debt. From the judgment and sentence of the court, this appeal is taken.

Eight exceptions are contained in the record to the rulings of the court upon the admissibility of testimony, and, since the case turns largely upon the legality of appellant's arrest, it is important to state at the outset the circumstances connected therewith.

On the afternoon of February 5th, Officer William Shaffrey had noticed an automobile parked on Parkin Street in Baltimore City. The doors of the car were found to be locked, and shortly thereafter he observed appellant coming out of a house on Reinhardt Street. He immediately stopped him and made inquiry as to the nature of his business, whereupon appellant stated he was working for the Salvage Company as a collector. The officer, after some other conversation, asked him if he had an identification card, and, upon receiving a negative reply, informed Sugarman that he would have to accompany him to the station house for questioning by Shaffrey's superior officers. He asked appellant whether the automobile on Parkin Street belonged to him, and, on being informed that it did, made further inquiry as to whether appellant wished to walk or ride to the station house. Sugarman stated that he would walk. They started walking along the Washington Boulevard to James Street, and the officer admitted he had not then seen appellant do anything that was "wrong or unethi-

cal," but he intended to take him to the police station on a general charge of investigation, because appellant's explanation of his business did not look reasonable to the officer. However, when they had reached the 1200 block of James Street, appellant said, "Let me go, officer. What's your name? I'll make it all right with you. I'll give you my automobile or anything. You know what I am doing. You know what Judge O'Dunne will do to me." Later the prisoner said, "Go to the station house and straighten that out." The officer replied that he did not wish to hear anything about the prisoner's business, and about this time Sugarman broke away from him and was chased down James to Ostend Street, down Ostend to Sargent, and disappeared. When he was running around the corner formed by the intersection of Sargent and Ostend Streets, he placed his hand in his pocket, but the officer did not see him pull anything therefrom. Before the trip to the police station, the prisoner was taken by Officer Shaffrey to the police call box at Cross Street and Washington Boulevard, where they were seen by Officer Palmer, who, after having a conversation with Shaffrey, proceeded to the 1100 block of Sargent Street, where he found four slips of paper in the gutter in that block. Notwithstanding the officer in pursuit of Sugarman, at the time he passed down Sargent Street, saw him taking nothing from his pockets, these four slips were subsequently identified as lottery tickets and admitted in evidence over appellant's objection. Later Shaffrey observed Sugarman coming out from Sargent Street and proceed north on Cross Street, then east on Ramsay Street, where the witness overtook him and arrested him a second time. He took him to the Southwestern Police Station, and charged him with disorderly conduct. He was searched, but nothing was found upon his person tending to incriminate him, and he was never tried upon the charge of disorderly conduct. They took from his pockets two keys, a savings bank in the form of a book which contained some dimes, and a notebook, and then placed him in a cell, the floor of which had previously

been swept and flushed. Twenty minutes later he again was brought out and searched, but nothing further was found on his person. However, in the cracks of a bench in the cell which the prisoner had occupied were found some small pieces of cardboard paper, which when pieced together conveyed the information that some one would pay "600 to 1" for all numbers drawn containing certain digits. There was also found on the cell floor a masticated and wet piece of paper which the officer stated was "about the size of a pin head," but, as this was not used by him in pasting the other slips together, it becomes unimportant. The information thus obtained from pasting together the cardboard slips caused the officers to feel Sugarman was connected in some way with a lottery, and they secured a warrant, which on its face entitled them to search his automobile, took the car to the station house, and, unlocking it with a key previously taken from him, found certain lottery tickets in one of its compartments.

Upon the theory that such articles had been obtained from the prisoner by virtue of an illegal arrest, there was filed by him, prior to the trial of the case, a motion to quash the search warrant of prisoner's automobile, and to require the state's attorney for Baltimore City to refrain from using any of said articles, papers, slips, memoranda, notebook, and private effects thus seized, or any information obtained therefrom upon the trial of said cause, and further to require the police officers and state's attorney to return said property so seized to the petitioner. To the overruling of this motion to suppress, the first exception was noted. The court, in making the ruling, conceded that, while the original arrest was unlawful as not being based upon any crime committed in the presence of the officer, yet his subsequent conversation with the officer constituted an offer and attempt to bribe him, and this of itself being a crime, the second arrest was lawful. But an examination of section 31 of article 27 of the Code (Supp. 1935) discloses that the offense of bribing or attempting to bribe an officer exists

only when such officer is in the performance of his official duties, and it would scarcely be contended that an officer was acting in the performance of any official duty in making an illegal arrest. Indeed, in such case, the officer not only is not acting in the performance of official duties, but contrary to them, for such conduct can only be regarded as a trespass against the person whom he illegally arrests. To accept any other view would afford members of society no protection whatever against an illegal arrest, merely because an officer entertained some suspicion as to their conduct. The authorities seem in accord that one illegally arrested may use any reasonable means to effect his escape, even to the extent of using such force as is reasonably necessary. 21 *C. J.* 380, sec. 17; *Ex parte Richards,* 44 Tex. Cr. R. 561, 72 S. W. 838; *Moore v. State,* 44 Tex. Cr. R. 159, 69 S. W. 521; *United States v. Boyer* (D. C.) 85 Fed. 425; *State v. Butler,* 178 Mo. 272, 77 S. W. 560; *People v. Ah Teung,* 92 Cal. 421, 28 P. 577, 15 L. R. A. 190, note; *State v. Leach,* 7 Conn. 452.

The State in effect admits the illegality of Sugarman's first arrest and concedes that under the circumstances he is not chargeable with attempting to bribe an officer, but seeks to justify his second arrest because in some manner the prisoner's remarks to the officer are an admission that he was engaged in some violation of law. The difficulty of accepting this contention lies in the fact that the statements made by the prisoner to the officer are insufficient to justify any such interpretation. Upon reason, as well as on the authorities previously cited, we feel that the remarks made by him cannot justify the second arrest, and while this means that we do not agree with the lower court's conclusion respecting the validity of that arrest, we nevertheless find no error in the court's ruling by which it refused the motion (1) to declare the search warrant for the search of the petitioner's automobile null and void, (2) to suppress and prohibit the articles found in the car from being used upon the trial of the case, and (3) to compel the officials to return said

articles to the prisoner. As thus presented, the motion is analogous to a practice commonly in use in federal courts for the purpose of suppressing evidence. Such practice is founded upon no statute of this State, nor is it supported by precedent to justify its propriety. And we may add that we see no reason for adopting it and thus compelling the State's witnesses in advance of a trial upon its merits to disclose to the prisoner the information which they possess pertaining to this case, which information is certain to be developed during the progress of the trial.

The second exception was taken to the action of the court in permitting Officer Shaffrey to detail the conversation between the prisoner and himself shortly after Sugarman's arrest. As we have already held that this language was not definite enough to be characterized as an admission by Sugarman that he was engaged upon some scheme of law violation, it follows that the statement should not, over appellant's objection, have been admitted in evidence before the jury to enable them, solely through the realms of speculation, to attach thereto some sinister meaning entirely foreign to its context. The ruling was erroneous and injurious, and the same applies to the rulings embraced in the third and sixth exceptions, the former of which concerns the remainder of the conversation between the officer and Sugarman previously detailed, while the latter relates to the admission of the four slips of paper found in the gutter and identified as lottery tickets.

The pieces of cardboard paper found in a crack of a bench in Sugarman's cell at the Southwestern Police Station had been pieced together by the officer by the use of tissue paper and thus read as follows: "We will pay 600 to 1 on all numbers except those that contain 1, 2 or 7." Over Sugarman's objection, this exhibit was admitted in evidence, and this raises the fourth exception. It should be borne in mind that the wet and masticated piece of paper spoken of by the officer and found upon the cell floor formed no part of this exhibit. The record

is devoid of testimony tending to show any possible con-
nection between the prisoner and the pieces of cardboard
found in the crack of the cell bench, but on the contrary
does show that, prior to being placed in the cell, Sugarman
was searched by the turnkey, who found no such articles
upon him. It is, therefore, entirely possible, as well as
logical, to assume that the scraps of cardboard thus found
may have been in the crack of the bench for some time,
as the sweeping and washing of the cell floor would in
no way have revealed their presence. For this reason,
it must be held that the admission of the exhibit consti-
tutes reversible error. But we find that no injury resulted
by reason of the court's ruling which occasioned the fifth
exception, since, notwithstanding the question there pro-
pounded as to what was found in the car was improper,
the record shows the question was not fully answered.

The remaining exceptions relate either to statements
made of articles found in Sugarman's automobile, or to
their admission in evidence. It is appellant's contention
that the search warrant secured for the search of Sugar-
man's car was not authorized under any statute, and
that, since a search warrant of this character was un-
known at common law, it is invalid, and any articles
seized by virtue thereof are not admissible in evidence.

A consideration of the following authorities has con-
vinced us of the correctness of the proposition thus
asserted: *Halsbury's Laws of England,* vol. 9, sec. 625,
and vol. 22, p. 498, note "c"; 56 *C. J.* p. 1155 (4) B; 24
*R. C. L.* p. 706, sec. 8. See, also, volume 1, *Bishop's New
Criminal Procedure* (4th Ed.) sec. 241 (3), where it
is stated: "Lottery Tickets and Materials—are sometimes
authorized by statute to be seized under it. And this has
been adjudged not unconstitutional."

The State refers us to no statute in force in Baltimore
City sanctioning a search warrant in this char-
acter of case, and we have found none. The question,
therefore, is squarely presented as to whether these arti-
cles, which were undoubtedly seized in pursuance of an
illegal arrest, may be admitted as evidence. This court,

in *Meisinger v. State,* 155 Md. 195, 141 A. 536, 142 A. 190, held that, in a criminal prosecution, evidence otherwise admissible would not be rejected because of the manner of its obtention, and, although it found that the search warrant there issued for intoxicating liquor was in violation of a local act for Cecil County, this did not render the liquor so seized thereunder inadmissible in evidence. But since that decision, the Legislature passed chapter 194 of the Acts of 1929, now Code, art. 35, sec. 4A (Supp. 1935), which provides as follows: "No evidence in the trial of misdemeanors shall be deemed admissible where the same shall have been procured by, through, or in consequence of any illegal search or seizure or of any search and seizure prohibited by the Declaration of Rights of this State; nor shall any evidence in such cases be admissible if procured by, through or in consequence of a search and seizure, the effect of the admission of which would be to compel one to give evidence against himself in a criminal case."

The reasons which prompted this enactment are not our problem, but we are bound by the law thus declared and must give it effect in any case to which its provisions apply. Since the passage of that act, this court, in *Gorman v. State,* 161 Md. 700, 158 A. 903, held that the search without any search warrant, or warrant for a defendant's arrest, of traverser's premises by an officer who entered an open door and proceeded into traverser's kitchen, and there found him in the possession of paraphernalia used in a lottery, was illegal. Since then this court has rendered other decisions which, because of different states of facts under consideration, prompted a holding that the provisions of section 4A did not apply. Thus in *Blager v. State,* 162 Md. 664, 665, 161 A. 1, where the traverser, without coercion, delivered to a police officer lottery tickets in his possession, the act did not apply. It was also held in *Callahan v. State,* 163 Md. 298, 300, 162 A. 856, that the section had no application where the person at the time of his arrest was engaged in the commission of a crime. Again in the late

case of *Zukowski v. State*, 167 Md. 549, 175 A. 595, Judge Urner, in delivering the opinion of the court, held that Section 4A had no application in that case, which was a prosecution under chapter 2, Acts of 1933 (Ex. Sess.) for possession by a liquor licensee of intoxicating liquor on which the tax had not been paid. The reason for that holding was based first upon a finding that, in securing his liquor license, the seller had given his consent to the search, also that, under section 34 of the act, the search was specifically provided for independently of such consent, and that apart from those considerations the act had expressly repealed all other laws inconsistent therewith to the extent of such inconsistency. But in this case no facts are present to justify the court in declaring the act to be without application. If in this and other instances its effect is to hamper the State in convicting those charged with crime by the provision that articles seized in their possession shall, because of the illegal arrest of the person, not be admitted in evidence, the remedy must be found by the legislative and not the judicial branch of the State government. We are not passing upon the question as to whether, as an incident to lawful arrest, a prisoner's vehicle may be searched for articles tending to evidence crime, as that question is not here presented, but, in view of the plain provisions of section 4A above quoted, it must be held that the court erred in its rulings, as previously indicated.

Because of the errors in the rulings of the trial court as specified, the judgment will be reversed.

*Judgment reversed and cause remanded.*

URNER, J., filed a dissenting opinion as follows, in which BOND, C. J., concurred.

I have been unable to agree with the conclusion that the defendant's second arrest was without legal justification. In my judgment his statements and offers, while accompanying the officer after his first arrest, and his significant conduct, were equivalent to an admission that

62

he was committing the misdemeanor of which he was evidently suspected, and were sufficient to bring his re-arrest, by the same officer, within the principle of the decisions in *Heyward v. State,* 161 Md. 685, 693, 158 A. 897, and *Blager v. State,* 162 Md. 664, 161 A. 1. The torn lottery ticket secreted in the cell which the defendant occupied, and the other similar tickets found along the course of his flight from the officer's original custody, as well as those discovered in his automobile, were, I think, under the circumstances, properly admitted in evidence. *Callahan v. State,* 163 Md. 298, 162 A. 856.