# RONALD JOE KABLE *v.* STATE OF MARYLAND

[No. 250, September Term, 1972.]

*Decided January 31, 1973.*

The cause was argued before ORTH, C. J., and POWERS, SCANLAN and DAVIDSON, JJ.

*James E. Kenkel* and *James Ignatius Keane,* with whom were *DePaul & Willoner* on the brief, for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arrie*

W. Davis, Assistant Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County, Vincent J. Femia, Deputy State's Attorney for Prince George's County, and Allen E. D'Appolito, Assistant State's Attorney for Prince George's County, on the brief, for appellee.

SCANLAN, J., delivered the opinion of the Court.

Appellant, Ronald Joe Kable, a Mt. Rainier policeman, was charged on a criminal information with receiving a $250.00 bribe for the purpose of influencing him in the performance of his official duties. He was tried and convicted before a jury in the Circuit Court for Prince George's County, Judge Perry G. Bowen presiding.

The appellant's major contentions on appeal are: (1) that the evidence was insufficient to prove that the bribe was to influence him "in the performance of any of his official duties" as a municipal policeman; and (2) that the trial court's instructions did not adequately advise the jury that it must find beyond a reasonable doubt that what the appellant did was part of his official duties. In addition, appellant argues: that he had a constitutional right to an indictment by a grand jury; that the trial court's denial of his motion raising his alleged right to a grand jury was an appealable interlocutory order; that the trial court erred in denying his suggestion for removal on the grounds of prejudicial pre-trial publicity; and that the trial court improperly limited examination of witnesses. We conclude that each of these contentions must be resolved against the appellant.

## I

## THE BRIBE WAS OFFERED AND RECEIVED TO INFLUENCE THE APPELLANT IN THE PERFORMANCE OF OFFICIAL DUTIES

The essential facts on which the charge of bribery was based are not in dispute. They show that a Mr. Mercer

agreed to pay and did pay, and the appellant agreed to receive and did receive, $250.00 in return for the latter requesting the *nolle prosequi* of three quite serious motor vehicle offenses, one relating to leaving the scene of an accident after colliding with a police car. Mercer was acting for a third party, a Mr. Gines, the person charged with these traffic violations. After receiving the $250.00 bribe, appellant orally requested the Assistant State's Attorney at Hyattsville to *nol. pros.* the traffic tickets. He then prepared, signed and submitted to the Assistant State's Attorney an official form entitled "Request for Nolle Prosequi." The form was prepared for use and signature by an "Arresting Officer." Kable requested one of his subordinates who had issued one of the three traffic tickets received by Gines to sign the form also. The reason which the appellant gave in recommending the *nol. pros.* was that the defendant "is waiting to go into the Army but is being held up because of these charges."

Appellant contends that in recommending the *nol. pros.* he was not performing "any of his official duties." He maintains that the only authority to *nol. pros.* a traffic violation is vested in the office of the State's Attorney and that any recommendation which an arresting officer might make is purely gratuitous and forms no part of the official duties of that officer. We disagree.

Article 27, Section 23 of the Code (1970 Repl. Vol.) provides, in pertinent part, that:

> "If any person shall bribe . . . any officer . . . of any . . . municipality . . . or any . . . municipal corporation of this State . . . in order to influence any such officer . . . in the performance of any of his official duties; and if . . . any officer . . . of any . . . municipality . . . or . . . any municipal corporation . . . shall demand or receive any bribe . . . for the purpose of influencing him in the performance of his official duties, or for neglecting or failing to perform the same, every such person so brib-

> ing or attempting to bribe any of such officers
> . . . and every such person so demanding or re-
> ceiving any bribe . . . shall be deemed guilty
> of bribery . . . ."

The precise issue before us is the proper interpretation of the words "official duties." In the only reported Maryland case directly construing those words, the Court of Appeals held that a person who was unlawfully arrested by a police officer could not be convicted of bribing the officer to secure his subsequent release. The Court reasoned that "the offense of bribing . . . an officer exists only when such officer is in the performance of his official duties, and it would scarcely be contended that an officer was acting in the performance of any official duty in making an illegal arrest." *Sugarman v. State,* 173 Md. 52, 56-7, 195 A. 324 (1937). But see *Soles v. State,* 16 Md. App. 656, footnote 8. *Sugarman,* however, represents only one end of the spectrum of a policeman's duties, *i.e.,* actions which a police officer is prohibited from undertaking and thus clearly beyond the scope of his official duties. As the Court of Appeals said in *Sugarman,* in such a case the officer "not only is not acting in the performance of official duties, but contrary to them . . . ." *Id.* The case now before us, however, does not fall within the coverage of *Sugarman.* Here, the appellant had lawfully charged the driver of the automobile with traffic violations and his authority to recommend the *nol. pros.* of those violations, if not expressly a part of his officially prescribed duties, clearly was not "contrary to them." *Id.*

At the other end of the spectrum from the *Sugarman* situation are official actions and duties which are expressly authorized by statute, rule or regulation. However, lying between the two opposite poles of (1) duties or actions obviously prohibited and (2) official duties expressly prescribed or authorized, is a large area in which the determination of whether or not the action of a policeman is part of his official duties must depend on

the particular facts. This is such a case. When the appellant requested the *nol. pros.* he was not carrying out any official duty expressly specified in writing, nor was he doing something that he was prohibited from doing as a policeman.

In *United States v. Birdsall,* 233 U. S. 223 (1913), the Supreme Court had occasion to discuss official actions falling within the undefined middle ground to which we have referred. In that case, employees of the Commissioner of Indian Affairs had been bribed to advise the Commissioner to recommend to the President that clemency should be granted to the person who had bribed them and who was under conviction of violating the liquor laws in the Indian country. In the course of its opinion, the Court said:

> "To constitute it official action, it was not necessary that it should be prescribed by statute; it was sufficient that it was governed by a lawful requirement of the Department under whose authority the officer was acting . . . . Nor was it necessary that the requirement should be prescribed by a written rule or regulation. *It might also be found in an established usage which constituted the common law of the Department and fixed the duties of those engaged in its activities . . . . In numerous instances, duties not completely defined by written rules are clearly established by settled practice, and action taken in the course of their performance must be regarded as within the provisions of the above mentioned statutes against bribery." Id.* at 230-31 (emphasis added).

We believe the rationale of the *Birdsall* case is applicable here. The "official duties of a police officer are . . . many and varied, extending from the enforcement of traffic laws to the prevention and detection of . . . crimes in all categories . . . ." *Cunningham v. State,* 190 Md. 578, 580, 59 A. 2d 337 (1948).

22

The evidence shows that the State's Attorney's Office in Prince George's County has had a practice for some time whereby police officers recommend the *nol. pros.* of traffic violations to the State's Attorney. The practice is evidenced by an official form prepared for use by arresting officers in recommending a *nol. pros.* It was this form which the appellant signed and submitted to the Assistant State's Attorney. Among the primary duties of the municipal and county police departments of Maryland is the enforcement of traffic regulations. Policemen aid in their enforcement by detecting violations, collecting evidence and appearing as witnesses for the prosecution. We do not believe that it could be maintained that it is not an official duty of a police officer to be a witness in a case which he instigates by issuing a summons. If the officer takes money to forego that duty, clearly he is guilty of bribery under the statute. Here, the appellant was not paid to absent himself when the cases were called for trial; he was bribed to obtain a *nol. pros.* The only thing he could do, which he did, was to recommend a *nol. pros.*, proceeding through channels and on the official form provided for that purpose.

In concluding that the appellant was acting within his "official duties" in recommending that the State's Attorney *nol. pros.* traffic violations, we "have given the statutory definition of bribery a construction broad enough to cover cases," such as this one, "where a public official has accepted a bribe to act corruptly in a matter to which he bears some official relation, though the act itself may be technically beyond his official powers or duties." *People v. Lafaro,* 250 N. Y. 336, 165 N. E. 518, 520 (1929). Thus, while the actual decision to *nol. pros.* a traffic violation is one which rests with the State's Attorney of Prince George's County, the right of a police officer in that County to recommend the *nol. pros.* of traffic cases in which he brought the original charges must be considered a responsibility implicitly authorized by custom and circumstance, amounting to an official

practice and, consequently, one of his "official duties" within the language of Article 27, Section 23 of the Code.

## II

## THE INSTRUCTIONS WERE PROPER

Appellant claims error in that portion of the trial court's instructions advising the jury on the issue of whether the appellant was acting within "official duties" when he requested the State's Attorney to *nol. pros.* the traffic violations. The relevant portion of Judge Bowen's charge reads:

> "The defendant in this case is charged with one offense: that is, of receiving a bribe. The elements of that offense are relatively simple: There must be an offer of something of value to a public officer or official with the intention that this thing of value influenced him in the performance of his official duties, and the thing of value must be received by the public official with the intention that by receiving it he will be influenced in the performance of his public duty.

> "The evidence in this case, or one line of evidence in this case, tends to disclose that the defendant in this case was a police officer in one of the municipalities here in Prince George's County and that in his capacity as a police officer a member of the public in his jurisdiction offered $250 in money—which the Court instructs you if you find that to be so meets the definition the law requires of a thing of value —that this offer was made with the intention that this officer should turn in a report to the State's Attorney that would cause traffic tickets to be nol-prossed or otherwise disposed of without a trial, without a record for the person accused, and that the officer received this money

> and thereafter did, in the course of his official capacity, make a report to the State's Attorney which requested that these charges be nolprossed. If you find beyond a reasonable doubt that these events occurred and that these facts are the facts, then the Court instructs you in an advisory capacity that these elements satisfy the Maryland law for receiving a bribe.
>
> "Now, if you find anywhere along the line that the evidence satisfies you that the person who received the money was not a public officer, that he did not receive it with the intention of influencing his official actions as such an officer or that no money was received, then, of course, he is to be found not guilty because all of those elements are necessary to the offense charged."

Appellant objected to the instructions at trial, arguing that they did not adequately advise the jury that it must find beyond a reasonable doubt that what Officer Kable did was part of his official duties. In essence, he maintains that the jury might have interpreted the instructions to mean that "the court believes and the court instructs it is, in fact, an official duty" which he performed when he requested that the State's Attorney not prosecute the traffic charges. We do not read the instruction that way.

In *Shotkosky v. State*, 8 Md. App. 492, 508-9, 261 A. 2d 171 (1970), we set out the general rule concerning review of jury instructions: "It is not necessary for this Court to decide that the instructions as given were the clearest of all possible instructions. It is sufficient that the instructions taken as a whole correctly stated the law." The instructions challenged in this case satisfy the standard referred to in *Shotkosky*.

The first paragraph quoted above sets out the elements of bribery. Judge Bowen followed this portion of his instruction with a conclusionary summary of what the

evidence tended to disclose. He referred to evidence which might indicate that the appellant "did, in the course of his official capacity, make a report to the State's Attorney." However, this item of evidence, like the other items of evidence adverted to by the court was preceded by the trial judge's general charge concerning the elements of bribery. Immediately following his summary of the evidence, the trial judge said: "If you find beyond a reasonable doubt that these events occurred and that these facts are the facts, then the Court instructs you in an advisory capacity that these elements satisfy the Maryland law for receiving a bribe."

Reading the charge as a whole, we believe that the instruction sufficiently advised the jury that the question whether the appellant acted within his official duties was for the jury to determine on the basis of the evidence and under the reasonable doubt standard.

## III

## THE APPELLANT WAS NOT ENTITLED TO INDICTMENT BY A GRAND JURY

Appellant maintains that he was denied due process of law by the State proceeding on a criminal information in this case rather than through indictment by a grand jury. We were confronted with a similar claim in *Fabian v. State*, 3 Md. App. 270, 239 A. 2d 100 (1968). The answer we gave there is again applicable here. We said:

> "[T]here is no provision of the Maryland Constitution requiring an indictment in any case. Article 21 of the Declaration of Rights merely requires that an accused 'hath a right to be informed of the accusation against him; to have a copy of the Indictment, or Charge in due time (if required) to prepare for his defense.' *State, ex rel. Butler v. Warden*, 195 Md. 713, 714. Although the Fifth Amendment to the Constitution of the United States provides in

part that '[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . ,' this provision has not yet been held to flow to the states through the Fourteenth Amendment. . . . There is no merit to the contention that the appellant was denied a constitutional right to indictment."

The appellant, however, would have us anticipate the Supreme Court of the United States. He argues that authority of *Hurtado v. California*, 110 U. S. 516 (1884) has been eroded by more recent Supreme Court decisions. In *Hurtado*, the Court held that the Fourteenth Amendment did not require that State criminal prosecutions be initiated by grand jury indictment. The Supreme Court has consistently adhered to *Hurtado*. The last clear expression of its continuing agreement with the rule of that case came in *Beck v. Washington*, 369 U. S. 541, 545 (1962).

The appellant, nevertheless, claims that the Supreme Court by its recent decision in *Benton v. Maryland*, 395 U. S. 784 (1969) has given a signal suggesting that the Court ultimately will overturn *Hurtado* and extend the Fifth Amendment grand jury right to the States through application of the Due Process Clause of the Fourteenth Amendment. In *Benton*, the Court held that the double jeopardy prohibition of the Fifth Amendment represented a notion that was "fundamental to the American scheme of justice," and that the prohibition was enforceable against the States through the Fourteenth Amendment. *Id.* at 796.

We eschew speculation on our part as to whether a majority of the present members of the Supreme Court of the United States might hold, despite the precedent of *Hurtado*, that the Fifth Amendment grand jury indictment right is "fundamental to the American scheme of justice" and thus binding on the States through application of the Due Process Clause of the Fourteenth

Amendment. We point out, however, that the grand jury was abolished in England in 1933 and that at the present time only half of the States use the grand jury as a regular adjunct of criminal prosecutions.[1] We also observe that, unlike the prohibition against double jeopardy, the requirement of trial by jury and other procedural protections of the Bill of Rights which operate for the protection of a defendant in a criminal case, the grand jury often has been an instrument more for the benefit of the prosecution than of the defendant and, indeed, not infrequently has operated to a defendant's severe detriment.[2]

In any event, whatever the ultimate outcome in the Supreme Court of the United States, we hold that there is no present requirement, either by virtue of the Maryland Constitution or the Fourteenth Amendment to the United States Constitution, which guarantees the appellant, charged only with a misdemeanor, the right to indictment by a grand jury.

## IV

## THE DENIAL OF APPELLANT'S MOTION TO DISMISS CLAIMING DENIAL OF HIS RIGHT TO GRAND JURY INDICTMENT WAS A NONAPPEALABLE INTERLOCUTORY ORDER

Appellant still maintains that the trial court's denial of his motion to dismiss because of the denial of his alleged right to be indicted by a grand jury was immediately appealable.[3] He also contends that upon the filing of a notice of appeal of the denial of his motion to dismiss, the trial court was divested of jurisdiction to pro-

---

1. Doub, *"Is the Grand Jury an Anachronism?,"* Maryland Bar Journal, October, 1971, p. 4.
2. *Id.* at 6-7.
3. Earlier we dismissed, without prejudice, appellant's attempt to appeal this ruling of the trial court. *Kable v. State,* No. 689, September 1971 Term, March 1, 1972 (*per curiam*).

28

ceed further. If it were true that the appellant had an absolute constitutional right to be indicted by a grand jury his contention that the trial court's denial of that right would be immediately appealable might have merit. *Raimondi v. State,* 8 Md. App. 468, 261 A. 2d 40 (1970). However, we have ruled in the past, and again hold in this case, that there is no such constitutional right under either Maryland or federal law. Accordingly, the trial court's order denying the assertion of that right was an interlocutory nonappealable order. Nor did the taking of an appeal from that nonappealable order inhibit Judge Bowen from proceeding to trial on the merits. As we said in *Raimondi v. State, supra* at 476:

> "To hold otherwise would be to sanction that which the court in *Lee v. State, supra,* deemed so distinctly odious—the stopping of criminal trials by filing appeals from interlocutory orders. If the accused in a criminal case could deprive the trial judge of jurisdiction to try and determine his case by taking an appeal from a nonappealable interlocutory order, then he would be vested with the power to 'paralyze the administration of justice in the [courts] by the simple expedient of doing what the law does not allow him to do, *i.e.,* taking an appeal from an order which is not appealable.' "

## V

## THE TRIAL COURT DID NOT ABUSE DISCRETION IN REFUSING APPELLANT'S SUGGESTION OF REMOVAL

Appellant filed a suggestion for removal in the trial court. The suggestion was supported by two articles appearing in Washington newspapers, both of which factually and dispassionately described the proceedings which had been instituted against the appellant. The appellant also introduced another article appearing in a

Prince George's County weekly newspaper which referred to the fact that the Prince George's County Council was going to investigate bribery but did not mention the case pending against the appellant.

In denying the suggestion for removal, the trial judge promised to pursue the issue of possible community prejudice on *voir dire* examination. When the *voir dire* question concerning prejudice was being formulated, only the State objected to its form. The judge then put the following question to the members of the jury panel:

> "Are there any of you . . . who entertain such strong feelings or preconceived notions, from whatever source derived, about bribing public officials that you feel that you could not fairly, coolly, impartially and dispassionately weigh evidence in such a case and arrive at a verdict based solely on the evidence presented in that case?"

The members of the jury answered the question negatively.

In *Barber v. State,* 16 Md. App. 235, 239, 295 A. 2d 814 (1972), we stated the rule applicable in determining whether a claim of possible bias or prejudice based on newspaper articles is asserted. We said:

> "The general rule concerning prejudicial publicity as stated by the Court of Appeals of Maryland is 'the burden is upon the party alleging prejudice to show: (1) that the newspaper article is prejudicial (2) that a juror has read the prejudicial newspaper article, and (3) that the jurors' decision at the trial was influenced by that newspaper article.' *Presley v. State,* 224 Md. 550, 555, 168 A. 2d 510, cert. den. 368 U. S. 957 . . . . See also *Graef v. State,* 1 Md. App. 161, 228 A. 2d 480 and *Sizemore v. State,* 5 Md. App. 507, 248 A. 2d 417." *Id.*

There was no showing here that the newspaper articles cited by the appellant were prejudicial. "Newspaper disclosures, standing alone, do not support a defendant's suggestion that such disclosures deny him a fair trial." *McLaughlin v. State,* 3 Md. App. 515, 520-21, 240 A. 2d 298 (1968). Nor was there any demonstration that any of the jurors had read the newspaper articles referred to by the appellant, much less any showing that the decision of any juror was influenced by those articles. It is true that *voir dire* examination may not always provide sufficient protection against pretrial publicity in cases where such publicity is massive, wide spread and clearly prejudicial. *See, e.g., Sheppard v. Maxwell,* 384 U. S. 333 (1966). Nevertheless, usually pre-trial publicity about a criminal case is sporadic and not by its nature prejudicial. In such cases, the trial court does not abuse its discretion when it relies on a careful *voir dire* examination to ascertain whether community prejudice against the defendant has influenced any members of the jury panel. *Veney v. State,* 251 Md. 182, 196, 246 A. 2d 568 (1968). That is the situation with which the trial judge was faced in this case. Under such circumstances, he did not abuse his discretion in protecting the appellant by *voir dire* examination and in finding that the appellant had not made an affirmative showing that he could not obtain a fair and impartial trial in Prince George's County.

## VI

## THE TRIAL COURT DID NOT ABUSE DISCRETION IN PROHIBITING CERTAIN QUESTIONS ON CROSS EXAMINATION

The appellant's final complaint is that the trial court unfairly limited the scope of cross examination of Mercer, the chief witness for the State, and of police witnesses who also testified for the prosecution. The allowance or disallowance of certain questions on cross examination normally rests within the sound discretion of

the trial judge. *Johnson v. State,* 4 Md. App. 648, 657-8, 244 A. 2d 632 (1968) ; *Holt v. State,* 3 Md. App. 544, 549, 240 A. 2d 355 (1968). We have reviewed the record carefully and can find no basis on which to hold that the trial judge abused his discretion in disallowing certain questions during the cross examination of witnesses for the State.

Clearly, the trial judge was correct in refusing to let appellant's counsel introduce evidence of Mercer's conviction for housebreaking, a conviction which had been reversed on appeal. *Mercer v. State,* 237 Md. 479, 206 A. 2d 797 (1965). It is well settled, and the appellant concedes, that by virtue of Article 35, Section 10 of the Code (1970 Repl. Vol.) arrests alone cannot be used to impeach the credibility of witnesses. *Neam v. State,* 14 Md. App. 180, 188, 286 A. 2d 540 (1972).

Moreover, during the course of his cross examination, Mercer admitted that he had been convicted of petty larceny and that he had been arrested for housebreaking. This was even more than appellant ordinarily would have been entitled to extract from the witness on cross examination. Under Article 35, Section 10, the fact of conviction of a specific crime may be introduced into evidence, but the details of its commission cannot. *Huber v. State,* 2 Md. App. 245, 234 A. 2d 264 (1967). Accordingly, the trial court acted properly in prohibiting appellant's counsel from questioning Mercer about his alleged mode of operation in committing the crime of housebreaking, especially in view of the fact that his conviction for that crime had been reversed on appeal.

The remaining rulings of the trial court in the course of examination of witnesses to which the appellant objects were clearly within the discretion of the trial judge. Indeed, it appears that appellant's real complaint is directed to the substantive testimony given by the witnesses for the prosecution, including Mercer, rather than to the trial judge's refusals to permit certain questions on cross examination. Such an objection, of course, goes to

**32**

credibility. The jury, however, apparently chose to believe the testimony offered through the prosecution witnesses. It is a conclusion which, under the evidence in this case, we are without grounds to displace.

*Judgment affirmed; appellant
to pay costs.*