492 A.2d 932

**Carl E. RICHARDSON**

**v.**

**STATE of Maryland.**

**No. 1274, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

May 21, 1985.

George E. Burns, Jr., Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Bruce C. Spizler, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Submitted before GARRITY, GETTY and KARWACKI, JJ.

KARWACKI, Judge.

Carl E. Richardson, the appellant, was convicted by a jury in the Circuit Court for Baltimore City (Bell, J.), of bribery and conspiracy to bribe, and he was sentenced to ten years imprisonment. In this Court the appellant contends that:

1. the evidence was insufficient to sustain his conviction;

2. the trial court erred in admitting certain evidence; and

3. the trial court erred in instructing the jury.

The events giving rise to the appellant's convictions are essentially undisputed. On June 8, 1983, at approximately 8:15 a.m., Trent Favar, a clerk at the State Department of Vital Records (DVR), in a pre-arranged rendezvous, met on the street near Favar's office with Charles Allen, a co-defendant of the appellant. Allen had been driven to the scene in an automobile owned and operated by the appellant. Allen and Favar walked around a corner while the

appellant waited in his parked vehicle. At that point, Allen handed Favar $300 in cash in exchange for six blank birth certificates and returned to the appellant's car. Unbeknown to the appellant and Allen, Favar had been equipped with a "body wire" which transmitted his conversation with Allen to police officers stationed nearby who had the meeting under surveillance. As soon as the transaction was completed the officers arrested Allen and the appellant.

During a subsequent consensual search of the appellant's automobile, a photocopy of a certificate of live birth with portions of the information obliterated was found in the trunk of the appellant's automobile.

The testimony of Favar and his supervisor, Randall Brooks, established that Favar had been a clerk for over three years at the DVR. He was one of three people at the DVR with access to blank birth certificates. He and many other employees had access to the State Seal. One of Favar's duties was to take applications for birth certificates, type the relevant information on the forms, and issue the certificates to the applicants.

## I. *Sufficiency of the Evidence*

The appellant makes a two-pronged attack upon the sufficiency of the evidence to convict him of bribery and conspiracy to bribe. First, he maintains that the evidence established that the act requested of Favar, to wit, the delivery of blank certificates of live birth, was outside of Favar's *official duties* and thus, an element of the crime of bribery is lacking. Second, he contends that the evidence failed to demonstrate his participation in the crime.

### A. *Scope of Favar's Official Duties*

The appellant was convicted under Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 23, which states in pertinent part:

If any person shall bribe or attempt to bribe any ... officer or employee of the State ... in order to influence any such officer or person *in the performance of any of*

*his official duties* ... every such person ... shall be deemed guilty of bribery.

(Emphasis added).

In *State v. Canova*, 278 Md. 483, 365 A.2d 988 (1976), the Court of Appeals reviewed the common law of bribery and its statutory and constitutional history in Maryland, and held that § 23 is "declaratory of the common law" with the exception not relevant here that only certain classes of public officials and employees may be the subjects of the bribes. *Id.* at 491, 365 A.2d 988. Both under the statute and the common law it is essential for a conviction of bribery that the briber must make an attempt to influence the bribee in the performance of his "official," "public" or "legal" duty.[1]

In *Kable v. State*, 17 Md.App. 16, 299 A.2d 493, *cert. denied*, 268 Md. 750 (1973), we observed that, as of that time, there had been only one reported Maryland case directly constructing the words "official duties." *Id.* at 20, 299 A.2d 493. That case was *Sugarman v. State*, 173 Md. 52, 56–57, 195 A. 324 (1937). In *Sugarman* the defendant had been unlawfully arrested by a police officer. The Court opined that he could not be convicted of bribing the officer to secure his subsequent release. The Court explained:

[T]he offense of bribing or attempting to bribe an officer exists only when such officer is in the performance of his official duties, and it would scarcely be contended that an officer was acting in the performance of any official duty in making an illegal arrest. Indeed, in such case, the officer not only is not acting in the performance of official duties, but contrary to them, for such conduct can only be regarded as a trespass against the person whom he illegally arrests. To accept any other view would afford members of society no protection whatever against

---

1. All three terms appear to be used interchangeably. See *Canova*, 278 Md. at 485–86, 365 A.2d 988. See also *Spector v. State*, 289 Md. 407, 425 A.2d 197, cert. denied, 452 U.S. 906, 101 S.Ct. 3032, 69 L.Ed.2d 407 (1981).

an illegal arrest, merely because an officer entertained some suspicion as to their conduct. The authorities seem in accord that one illegally arrested may use any reasonable means to effect his escape, even to the extent of using such force as is reasonably necessary.[2]

In *Kable* the defendant was a police officer who accepted $250 in return for his recommendation to the State's Attorney that certain serious motor vehicle charges against a third person be *nol prossed.* We discussed the significance of *Sugarman* in the *Kable* opinion:

> *Sugarman,* however, represents only one end of the spectrum of a policeman's duties, *i.e.,* actions which a police officer is prohibited from undertaking and thus clearly beyond the scope of his official duties. As the

---

**2.** *Sugarman,* 173 Md. at 56–57, 195 A. 324 (citations omitted). This Court called into question much of the vitality of the decision in *Sugarman* when in *Soles v. State,* 16 Md.App. 656, 675–76 n. 8, 299 A.2d 502 (1973) we stated:

> *Sugarman* overturned a lottery conviction by a 4 to 2 split decision, with Chief Judge Bond and Judge Urner dissenting. The decision was in 1937 and is a treasure chest of now-discarded principles. The Fourth Amendment was, of course, an irrelevancy and would remain so for another 24 years. The case turned upon such questions as the non-recognition by the common law of such a thing as a pre-trial suppression hearing, upon the applicability of the Bouse Act, upon the jury hearing testimony which would today go only to the issue of probable cause and upon the non-recognition by the common law or by the laws of this State of the very device of a search warrant for an automobile. The broad principle for which *Sugarman* is here cited—that an officer making an unlawful arrest is acting "contrary to his duty" and is therefore (1) incapable of being bribed by the arrestee and (2) an appropriate subject for "such force as is reasonably necessary" for the arrestee "to effect his escape"—was from a time when close constitutional calculations would not nullify an apparently good arrest procedure. In *Sugarman,* moreover, there was no bribery conviction or attempted bribery conviction actually under review. The whole business of an at-best ambiguous bribery offer was before the court in the oblique capacity of an oral admission which, the State urged, might escalate an abjectly inadequate first arrest into a proper second arrest, based upon that offer and upon attempted flight. As boldly as a single sentence or two may come down for appellant's present purposes, the factual and legal foundations for those sentences are treacherously anachronistic.

Court of Appeals said in *Sugarman,* in such a case the officer "not only is not acting in the performance of official duties, but contrary to them...." *Id.* The case now before us, however, does not fall within the coverage of *Sugarman.* Here, the appellant had lawfully charged the driver of the automobile with traffic violations and his authority to recommend the *nol. pros.* of those violations, if not expressly a part of his officially prescribed duties, clearly was not "contrary to them." *Id.*

At the other end of the spectrum from the *Sugarman* situation are official actions and duties which are expressly authorized by statute, rule or regulation. However, lying between the two opposite poles of (1) duties or actions obviously prohibited and (2) official duties expressly prescribed or authorized, is a large area in which the determination of whether or not the action of a policeman is part of his official duties must depend on the particular facts. This is such a case. When the appellant requested the *nol. pros.* he was not carrying out any official duty expressly specified in writing, nor was he doing something that he was prohibited from doing as a policeman.

*Kable,* 17 Md.App. at 20, 299 A.2d 493. We also discussed the import of the United States Supreme Court case of *United States v. Birdsall* which added some flesh to the bare bones of the words "official action":

In *United States v. Birdsall,* 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930 (1913), the Supreme Court had occasion to discuss official actions falling within the undefined middle ground to which we have referred. In that case, employees of the Commissioner of Indian Affairs had been bribed to advise the Commissioner to recommend to the President that clemency should be granted to the person who had bribed them and who was under conviction of violating the liquor laws in the Indian country. In the course of its opinion, the Court said:

"To constitute it official action, it was not necessary that it should be prescribed by statute; it was suffi-

cient that it was governed by a lawful requirement of the Department under whose authority the officer was acting.... Nor was it necessary that the requirement should be prescribed by a written rule or regulation. *It might also be found in an established usage which constituted the common law of the Department and fixed the duties of those engaged in its activities.... In numerous instances, duties not completely defined by written rules are clearly established by settled practice, and action taken in the course of their performance must be regarded as within the provisions of the above mentioned statutes against bribery.*" *Id.* at 230–31, 34 S.Ct. at 514–15 (emphasis added).

*Kable,* 17 Md.App. at 21, 299 A.2d 493. In upholding the police officer's conviction of bribery in *Kable* we stated:

In concluding that the appellant was acting within his "official duties" in recommending that the State's Attorney *nol. pros.* traffic violations, we "have given the statutory definition of bribery a construction broad enough to cover cases," such as this one, "where a public official has accepted a bribe to act corruptly in a matter to which *he bears some official relation,* though the act itself may be technically beyond his official powers or duties."

*Id.* at 22, *quoting People v. Lafaro,* 250 N.Y. 336, 165 N.E. 518, 520 (1929) (emphasis added).

■ We believe that the facts of the case *sub judice,* as in *Kable,* fall somewhere between the two poles described in *Kable, supra.* Favar was one of only three people with access to the blank birth certificates. His official duties essentially consisted of delivering those certificates complete with relevant information to applicants properly entitled to them. Indeed, Md.Code (1982), § 4–226 of the Health—General Article specifically prohibited Favar from failing to execute and deliver a certificate when the applicant was entitled to it under that statute. The appellant and his co-conspirator paid $300 in order to have Favar

deliver to them blank certificates. Although this would be a violation of Favar's duties as an employee at the DVR, it clearly bore a *relation* to his official duties. If the appellant had offered the money for Favar to complete the certificates with incorrect information while he was acting in his official capacity at the vital records office, the crime of bribery would have been committed. We see no valid distinction merely because the act requested of Favar was that he deliver the certificates in blank.

The appellant argues that because the act requested of Favar was a breach of his duties as an employee, and perhaps, a criminal violation, it was outside the scope of his official duties and, therefore, no conviction for bribery can flow from that request. We do not read *Sugarman* that broadly. We find support for our position in numerous cases from Maryland and our sister jurisdictions.

Of primary importance is the *Kable* decision itself. It is clearly illegal for a police officer to act out of a motive of personal gain when making a recommendation to *nol pros* charges against an accused. Nevertheless, Kable's conviction of bribery was upheld. Also, in *Klein v. State,* 52 Md.App. 640, 452 A.2d 173 (1982), the defendant appealed from the denial of a motion to dismiss an indictment.[3] We upheld the indictment which alleged that the defendant bribed several plumbing inspectors to process plumbing permits without performing their lawful duty of inspecting the defendant's work. The case *sub judice* is analogous to *Klein* inasmuch as the effect of the inspector's actions was to issue the permits in a manner contrary to law. Again, this was not found to be a bar to a bribery prosecution.

In *State v. Hendricks,* 66 Ariz. 235, 186 P.2d 943, 947 (1947) the Supreme Court of Arizona summarized the law of various states when it explained:

---

3. Since the appellant raised a claim of double jeopardy the appeal was permitted prior to trial.

As to defendant's proposition of law that there can be no bribery of an officer outside the scope of his official duty, we have no quarrel. But it must be fairly construed. The reason for making it an offense to bribe a public officer is because of its tendency to pervert justice. Therefore, although there is a definite split of authority, the numerical weight of decisions, the text writers, and what we believe to be the best-reasoned opinions support the proposition that if the matter toward which the attempted bribe is directed has an *actual relation* to the officer's official duties it is immaterial that the law may be silent upon the officer's power to act or failure to act in the particular matter at hand.

(Emphasis added). We believe that Maryland law is in accord. As emphasized above, we held in *Kable* that it is sufficient that the illegal act requested of the state employee bear some *relation* to his official duties. In the present case there was an obvious relation between the request made of Favar and his official duties inasmuch as he was employed to "execute and deliver birth certificates." We therefore reject the appellant's first challenge to the sufficiency of the evidence on which he was convicted.

B. *Presence of Appellant at Scene of Crime*

The second issue the appellant raises in challenging the sufficiency of the evidence, is that his mere presence at the scene of the crime is insufficient evidence of his criminal agency.

■ In answering this issue we note that the jury was instructed, correctly, that "mere presence" at the scene of the crime does not make one a participant in a criminal act. As we said in *Nichols v. State,* 5 Md.App. 340, 350, 247 A.2d 722 (1968); *cert. denied,* 253 Md. 735 (1969):

The law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of a fact may be inferred. No greater degree

of certainty is required when the evidence is circumstantial than when it is direct, for in either case the trier of fact must be convinced beyond a reasonable doubt of the guilt of the accused.

We continued:

The lower court could weigh the evidence and determine the credibility of the witnesses. It was under no obligation to believe the appellant's denials or explanations.

*Id.* at 351, 247 A.2d 722 (citations omitted).

■ When viewed in its entirety, the evidence here reflects more than the "mere presence" of the appellant near the scene of the crime. The appellant, in his own car, drove Allen to near the intersection of Preston and Howard Streets. While Allen alighted from the car and met with Favar, the appellant waited in the driver's seat. This entire transaction took only a few minutes, after which Allen returned to the appellant's vehicle. Our examination of the record indicates that Allen and Favar were out of the appellant's view for approximately one minute. Moreover, a search of the trunk of the appellant's vehicle revealed a photostatic copy of a certificate of live birth with the identifying information on the certificate obliterated. Clearly, this evidence supports a rational inference that the appellant was an accomplice in the bribery and had the "common criminal purpose" with Allen to commit the offense.

## II. *Admission of Evidence of Photostatic Copy of Birth Certificate*

■ In his second contention the appellant maintains that the photostatic copy of a birth certificate found in the appellant's trunk was inadmissible. It was offered, not as proof of the information contained therein, but as probative evidence of the appellant's state of mind regarding the bribery. As we said in *Farley v. State:*

Evidence need not be positively connected with the accused or the crime in order to render it admissible; it is admissible where there is a probability of its connection with the accused or the crime, the lack of positive identification affecting the weight of the evidence, rather than its admissibility.

3 Md.App. 584, 587, 240 A.2d 296 (1968) (citation omitted). The seized copy of the birth certificate was admissible since it demonstrated a probability that the appellant was connected with the crime and was aware of Allen's purpose for meeting with Favar.

### III. *Jury Instructions*

 Upon request the jury must be furnished with an instruction correctly explaining guilt beyond a reasonable doubt. *Lansdowne v. State*, 287 Md. 232, 239, 412 A.2d 88 (1980). Defense counsel in the instant case took exception to the trial court's explanation which included the phrase: "[I]f your mind is in a state of even balance, the verdict would be not guilty." This explanation, contends the appellant, was improper since, as defense counsel stated at trial, "it could give the impression that the burden is, could be a preponderance of the evidence as opposed to reasonable doubt." The phrase objected to cannot be read out of the context of the trial judge's explanation of guilt beyond a reasonable doubt which preceded it:

A reasonable doubt is perhaps best defined by attaching to the words their common and ordinary meaning. And when one does that, reasonable doubt is probably defined as a doubt which is based on reason. It is not, therefore, a doubt which is illogical or capricious, nor is it a doubt for which there exists, nor is it a doubt which is based on mere conjecture; rather it is a doubt for which there exists a sound and logical basis. We may also define reasonable doubt in the following fashion: if, after a consideration of all the facts in this case, you can say that

you have an abiding conviction of the defendant's guilt, such as you would be willing to act upon in your important affairs, then you have no reasonable doubt. Stated yet another way, the evidence is sufficient to remove a reasonable doubt when it convinces an ordinarily prudent person of the truth of the proposition to the degree that he or she would act upon this situation without hesitation in his or her own personal affairs. Now, while you are not to find the defendants or either of them guilty if you entertain a reasonable doubt as to guilt, you are not to search for a doubt. The doubt referred to must be such as would naturally arise in the mind of a reasonable person upon review of all the evidence in the case.

In *Montgomery v. State,* 292 Md. 84, 437 A.2d 654 (1981), the Court of Appeals held improper a jury instruction relative to reasonable doubt. After noting that an instruction should indicate the degree of gravity with which the decision making process should be endowed, the Court of Appeals said:

> [W]e decline to prescribe an instruction that will apply in every case. Suffice it to say, that in our opinion instructing a jury that reasonable doubt is a doubt which is founded upon reason without focusing their attention on the grave importance of their decision based on the evidence and their commitment to be bound by the result is a circular attempt at explanation which does nothing more than define the term by using the term.

*Id.* at 95, 437 A.2d 654.

We are satisfied that the instruction in the present case, when read in its entirety, sufficiently apprised the jury of the reasonable doubt standard of proof by which the State's case must be tested. The requirement of *Lansdowne v. State, supra,* was therefore satisfied.

JUDGMENTS AFFIRMED;

COSTS TO BE PAID BY THE APPELLANT.