THE STATE OF OHIO, APPELLEE, v. ITALIANO, APPELLANT.

[Cite as State v. Italiano (1985), 18 Ohio St. 3d 38.]

(No. 84-968—Decided June 26, 1985.)

*John T. Corrigan,* prosecuting attorney, and *N. Stephen Nigolian,* for appellee.

*Cassidy & Mottl* and *Paul W. Cassidy,* for appellant.

REILLY, J. Defendant-appellant's first two propositions of law raise but one issue: whether the state proved that defendant gave money to the officers with the purpose to influence them in the discharge of their duties. Defendant argues that the officers' sole duty at the pretrial is to relate the operative facts to the prosecutor, and that it is only the prosecutor who is empowered to negotiate a reduction of the charge. As a one-time city prosecutor and an experienced defense attorney, defendant notes, he was aware that the officers had no authority to reduce the charges against his client. Moreover, he asserts, the testimony shows that he did not at any time ask either officer to fail to appear at the pretrial or to change their version of the arrest of Riffle. Finally, defendant contends the only evidence possibly supporting a finding of an intent to influence the officers in the discharge of their duties was circumstantial in nature, and was not irreconcilable with any reasonable theory of innocence. Thus, defendant concludes that the state failed to show that he paid the money with the intent necessary to constitute a bribe under R.C. 2921.02.

Defendant's argument in support of these first two propositions of law is premised upon an overly restrictive view of the role of the police officers at a pretrial. He asserts that their only role is that of witnesses, and cites the officers' testimony and a Cleveland Police Department manual outlining the officers' duties as proof of this assertion. For purposes of a prosecution for bribery of a public official, however, an official duty can arise from usage as well as from a written rule or regulation. *United States* v. *Birdsall* (1914), 233 U.S. 223; *Kable* v. *State* (1973), 17 Md. App. 16, 299 A. 2d 493, certiorari denied (1973), 268 Md. 750.

It is clear from defendant's own testimony that the prosecutor assigned to the *Riffle* case deferred to the recommendation of the arresting officers in considering a reduction of the charge. Thus, according to defendant, although he and the prosecutor had tentatively agreed to a reduction to "physical control," it became necessary to continue the case and meet with Moczulski when the officer voiced his objection to the reduction. Therefore, the officer was charged with the duty to confer with the prose-

cutor beyond merely relating the factual occurrence which led to the arrest, and it was this duty which defendant sought to influence through the payment of money.

Although this exact question has not been specifically considered by this court, other jurisdictions have held that it is not a defense to a charge of bribery that the official bribed did not have the ultimate authority to do the act sought, provided that the money was paid in exchange for the official's efforts to influence the judgment of others. See, *e.g., Birdsall, supra; Kable, supra; People* v. *Mitchell* (1972), 40 App. Div. 2d 117, 338 N.Y. Supp. 2d 313. Such reasoning is persuasive in the present instance. It was the practice, at least with the prosecutor in the *Riffle* case, to obtain the arresting officer's opinion on any possible reduction of the charge. Consequently, defendant sought to influence the officers in the discharge of this duty.

Moreover, there was sufficient direct evidence presented to the trial court to show that it was defendant's intent to influence the officers' actions. Defendant argues that the circumstantial evidence relied upon to prove intent is not irreconcilable with a reasonable theory of innocence, such as the payment of money for future business referrals. However, it is only when circumstantial evidence alone is relied upon to prove an essential element of the crime that it must be irreconcilable with any reasonable theory of innocence. *State* v. *Kulig* (1974), 37 Ohio St. 2d 157 [66 O.O.2d 351]. Here, there was also direct evidence that defendant intended to influence the discharge of the officer's duties, including his statement to the Riffles that Moczulski would not agree to a reduction, but that "$100 would take care of it" and defendant's statement to Moczulski that the $50 was in exchange for "some leniency for the guy."

Defendant also seems to argue that the circumstantial evidence does not support the inference that he intended to influence the officers since it indicates only that he would agree to a charge of "physical control," that the prosecutor had already agreed to a reduction to "physical control," and that Moczulski testified that he would not object to a reduction to "physical control." Thus, he maintains there was nothing to gain by bribing the officers. However, as noted above, there was direct evidence of defendant's intent to influence the officers and, thus, there was sufficient support for the inference that defendant intended to seek a reduction to the least charge possible, reckless operation.

The evidence indicates that the arresting officers were, by custom or usage, vested with the official duty to confer with the prosecutor on the charges and render their unbiased opinion on any proposed reduction. It was this official duty which defendant sought to influence by the payment of money, and such payment constitutes the offense of bribery under R.C. 2921.02.

Defendant argues in his third proposition of law that he established the affirmative defense of entrapment at the trial level through proof that

he was not predisposed to commit the crime of bribery, and that the criminal design originated with the police, who induced him to commit the offense. He alleges that the fact the criminal design originated with the law enforcement officials is clearly shown in the evidence that it was the prosecutor who suggested that defendant meet with Moczulski, that defendant desired a meeting in a public building but that Moczulski preferred a private location, and that it was Moczulski who repeatedly steered the conversation to the *Riffle* case and who first asked defendant what a reduction was worth to defendant and his client. He further argues that he proved a lack of predisposition through character witnesses who testified to defendant's excellent reputation for truth and veracity, and through proof that he had no prior criminal record.

Entrapment was defined by this court in the first paragraph of the syllabus in *State* v. *Doran* (1983), 5 Ohio St. 3d 187, as follows:

"The defense of entrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute."

It is not entrapment, however, when it is shown that the accused was predisposed to commit the offense, and the state merely provided the accused with the opportunity to commit the offense. *Doran, supra,* at 192.

In this case, defendant's predisposition to commit bribery is supported by sufficient evidence. He stated to the Riffles, at the first pretrial, that he felt that $100 would "take care of" Moczulski's objection to a reduction of the charge. The meeting with Moczulski, at which defendant gave the officer $50, was arranged by the defendant for the express purpose of discussing the *Riffle* case. Thereafter, defendant met Hyland at the second pretrial, and gave him $50 without the ruse of future business referrals. While the character evidence offered by defendant was also probative of the issue of predisposition, the resolution of conflicting evidence was for the trial court, whose judgment is supported by sufficient evidence. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [31 O.O.2d 457].

Moreover, the evidence cited by defendant fails to establish that the state planted the criminal design in the innocent mind of defendant. His reference to the fact that it was the prosecutor who suggested that he meet with Moczulski is not probative of defendant's contention, since there is no proof that the prosecutor suggested a payment to the officer and, further, considering that there are countless legitimate reasons for a meeting between defense counsel and the arresting officer.

The fact that the officer preferred a private location for the meeting cannot be considered an inducement to commit a bribe. In fact, the testimony shows that defendant did not want to discuss the matter over the telephone, because he felt that police phones were tapped. Nonetheless, the best evidence of the origin of the criminal design is defendant's own testimony that he told the Riffles that, while he did not know

whether Moczulski would take any money, it was his impression that the officer wanted a bribe.

In summary, there was sufficient probative evidence to support the trial court's finding that defendant was predisposed to commit the offense of bribery, and that the criminal design was not planted in his mind by the state. The state merely provided defendant with the opportunity to offer the bribe, and did not induce him to commit the offense.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY, Acting C.J., LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

SWEENEY, J., sitting for CELEBREZZE, C.J.

REILLY, J., of the Tenth Appellate District, sitting for SWEENEY, J.