Ruffin, C. J.
 

 In the case of Robert Hildreth at the present term, the Court had occasion to give an opinion on the degree of the guilt of that person, according to the evidence given by the witness, Edmund Taylor ; which was in accordance with the instruction given in the present casé, in which the Court confined the attention of
 
 *443
 
 the jury, upon that question, to the testimony of that witness only. The facts deposed to by him are substantially the same in both cases : and therefore there is nothing for this Court to add on that point. The only material difference in the cases is, that, on Robert’s trial, there was no attempt to discredit that witness, while on David’s, there was evidence given both of his weakness, and of a falsehood or a mistake in his testimony. But no error, as we think, was committed by the presiding Judge in respect to that part of the case ; for, he expressly avoided expressing any intimation of opinion on the credit due to the witness, and as expressly told the jury, that it was exclusively for their consideration; and we hold, that it was clearly within the appropriate powers and duties of the Judge to lay distinctly before the jury the various considerations, arising out of the evidence, tending to sustain or impeach the credit of the witness — leaving it, all the while, to the jury exclusively to judge of their weight.
 

 The Court likewise agrees, that aiding and abetting was properly explained to the jury, and that they might have found the prisoner guilty, accordingly, if he used the words deposed to with either of the intentions supposed; provided, there had been a previous understanding between the brothers, that one of them should kill the deceased, or do him great bodily harm, and that the other should abet it by his presence and encouragement. If it could be seen that the verdict was founded on that ground, we should deem it undoubtedly correct in point of law. But that cannot be assumed ; because the case was also left to the jury upon a supposition, that there was no such previous understanding, and that Robert was guilty of murder upon the malice implied by the circumstances, mere, ly, of the killing — in which case the jury was instructed, in the alternative, that the prisoner was guilty of murder, if, after he entered the field, he discovered that his brother intended to use the knife, in time to have prevented
 
 *444
 
 him. The jury may have given their verdict on this latter instruction; and, therefore, if it ought not to have been given, the conviction ought not to stand. The Court is of opinion, that it ought not-to have been given. It is to be observed, in the first place, that, upon the evidence, there was no opportunity for the prisoner to discover, “ after he entered the field,” that his brother had prepared or meant to use a deadly weapon, until the rencoun-ter commenced; for the two brothers came in opposite directions and had not been together in the field, until the prisoner rode up and stopped eight or ten steps on one side of the stack, when Robert and Taylor were on the other. Again, it is apparent, that he could not then have made the supposed discovery, until after the fight began, when Taylor retreated past the stack and Robert pursued, so as to bring the parties on the same side of the stack with the prisoner, and in his view. Such is the state of facts to which the instruction is to be applied; and, thus applied, we think it inaccurate. For supposing the prisoner to have no previous concert with his brother, and that, during the combat, he first discovered, that the other intended to use a deadly weapon, we think, he was not guilty of murder, although he made the discovery in time to have prevented Robert from actually giving the stabs. For one, who is present and sees that a felony is about being committed and does in no manner interfere, does not thereby participate in the felony com-mitled. Every person may, upon such an occasion, interfere to prevent, if he can, the perpetration of so high a crime ; but he is not bound to do so at the peril, otherwise, of partaking of the guilt. It is necessary, in order to have that effect, that he should do or say something, shewing his consent to the felonious purpose and contributing to its execution, as an aider and abetter. Therefore, the proper instruction, in the case supposed, would have been, that if the prisoner, after discovering
 
 *445
 
 the deadly intention of his brother, instead of preventing its execution, deterred others from preventing it, or incited his brother to go on, then he would be guilty of murder. If the case had been so put explicitly to the jury, it seems highly probable, they could not have convicted the prisoner of murder. For, upon the hypothesis assumed, that the prisoner discovered the fatal purpose of Robert, for the first time, during the combat, there is nothing to shew, that he used the expression, “ Hush or I’ll whip you,” after such discovery, or in any other way gave his sanction to the attempt or the deed. His presence did in no way contribute to the fact; or, at all events, it did not appear that he could so have intended. It is true, that he uttered no expression of .surprise or regret at the fact; which might, indeed, with other things, have some weight in inducing a belief of some concerted action between the brothers. But, of itself, it affords no evidence that the prisoner assented to or meant to encourage the perpetration of a murder, which he at that time, first discovered. Even the witness, Edmund Taylor, expressed no such surprise or regret, though he says the event was unexpected by him, and that he endeavored to avenge it. Indeed, it seems to the Court, upon a calm consideration of the circumstances, that there was no evidence, upon which the case should have been left to the jury on the question, whether the prisoner did aid and abet after his discovery of Robert’s intention to use the knife, as already supposed ; or, even, on the other question,, whether the prisoner knew of such intention of Robert before he actually used the knife in giving the mortal blow. For the witness was in a much better situation to discover it, than the prisoner was ; and it appears, that from the imperfect light, the cautious concealment of the instrument by Robert, and his sudden onset, the witness was unable to perceive the knife, although he looked particularly for that purpose. How, then, can it
 
 *446
 
 be inferred, without other evidence, that the prisoner, on the other
 
 side
 
 of the stack and further oiF, saw the knife and immediately knew the extremity to which the assailant would go with it ? Upon these grounds the Court deems the conviction erroneous, and directs a
 
 venire de novo.
 

 As the case may be brought to another trial upon the allegation of express malice and preconcert between the brothers, it seems proper to dispose of a question of evidence, which arose on the former trial and might possibly be made on another. The point was this. The prisoner offered to prove by his sister, that, after dark, on the night of the homicide, she heard Robert and David in conversation near their father’s, and about three or four miles from Taylor’s; and that, before
 
 they perceived her,
 
 and when the prisoner had no reason to think he was overheard, she heard the prisoner say to Robert, “You ought not to have done so,” and that, from his voice, she knew that he was crying. The Court rejected the evidence. We concur in the decision. The general rule is, that a person’s own declarations are not admissible for him. The rule is not founded on the idea, that they would never contribute to the ascertainment of truth ; for, very often, they might be entirely satisfactory. But there is so much danger, if they were received, that they would most com» monly consist of falsehoods, fabricated for the occasion, and so would mislead much oftener than they would enlighten, that
 
 it
 
 was found indispensable, as a part of the law of evidence, to reject them altogether, except under a few peculiar circumstances. This case does not fall within any established exception. It is impossible to ascertain, whether the prisoner had or had not perceived his sister ; or whether he bad no reason to believe that he was over-heard by her’or some other member of the family, or some one else ; or whether his tears were sincere or feigned. It was merely a declaration, subsequent
 
 *447
 
 to the event alluded to — if the allusion was to this occurrence — and not forming part of the transaction ; and, therefore, the objections, on which the general rule rests, apply with full force against its admissibility.
 

 Per Curiam. This opinion ordered to be certified to the Court below, that they may proceed accordingly.