JAMES CONNAUGHTY, impleaded with Patrick Mc-
Donald, *Plaintiff in Error.*

*vs.*

THE STATE OF WISCONSIN.

ERROR TO MILWAUKEE CIRCUIT COURT.

The standing by within a few feet of the assailants, when a murder is being
committed, saying and doing nothing, is not sufficient of itself legally to
satisfy the jury of such by-stander's aiding or abetting in the commission of
'the crime.

Mere *presence* is not sufficient to constitute the party a principal, without he
aids, assists or abets.

A person may be present at the commission of a felony, if he takes no part in
it, nor consent to it or encourage it, though he do not endeavor to prevent
it, nor to apprehend the felon, such conduct, though highly criminal, will
not render him either principal or accessory in the felony.

It is error to charge the jury that the person standing by is presumed to know
and understand the effect of great violence, as well as he who inflicts it.

To instruct a jury that "if the prisoner was standing by within a few feet of
the assailants, and if he did not interfere, or attempt by word or act to ar-
rest the violence, it is a strong circumstance against him—it may of itself
satisfy you of his advising or procuring the blows to be inflicted," is error.

The plaintiff in error, and his co-defendant below,
were tried on an indictment, for the wilful murder of
John Gullen, at the May Term of the Circuit Court
for Milwaukee county, and were both found guilty of
murder in the first degree, and the punishment of
death was awarded by the jury, in conformity with a
late act of the legislature. Judgment was accord-
ingly rendered thereon and sentence passed. Con-
naughty sued out a writ of error from this court, and
accordingly his case alone is considered. The bill of
exceptions was prepared, evidently, in reference to his
case alone, which was submitted to this court without

JUNE TERM,
1853.

Connaughty
vs.
The State of
Wisconsin.

argument. The case is fully stated in the opinion of the court, so far as the record itself presents it.

*Jas. A. Mallory*, for the plaintiff in error.

*E. Estabrook*, attorney general for the State.

*By the Court*, CRAWFORD, J. At the May Term, A. D. 1852, of the Circuit Court of the county of Milwaukee, the plaintiff in error, (James Connaughty,) and one Patrick McDonald, were tried on an indictment for the wilful murder of John Gullen. The jury having found and returned a verdict of "guilty of murder in the first degree," against both defendants; on a subsequent day in the same term, the Court sentenced each of the defendants to suffer the punishment of death. A bill of exceptions on behalf of the defendant, Connaughty, was sealed and filed, and the case comes before us by a writ of error allowed by the Chief Justice.

We cannot commend the brevity manifested in this bill of exceptions. In a case of so great moment as this, when the life of a fellow being is at stake, it is important, as well for the due administration of justice, as for the protection of life, that the whole facts and circumstances of the case, should be set forth by the exceptions. Enough, however, appears in this bill to enable us to dispose of the case.

It was given in evidence on the trial, on the part of the prosecution, that " the night of the murder was a gloomy, misty night ; witness could not tell how many were on the ground till he had looked awhile ; thought first that it was Connaughty and his

wife quarrelling, till he heard Connaughty coughing

in his own house. Witness spoke to McDonald and he got off the man, and came immediately towards witness' house, and the man got up immediately and went towards Milwaukee street. Did not see him afterwards; can't say whether the man had a coat or cap on, it was a gloomy night; at the time McDonald got off the man, heard Connaughty coughing in his own house; did not see him out that night." This evidence was given by Charles Mallen, a witness sworn for the prosecution. On the part of the defendant Connaughty, the following evidence was given : "Connaughty did not go out that night; at the time of the row, Connaughty and wife went to the door of their house in their night clothes, and Connaughty told McDonald to go into the house, and not be fighting. Connaughty had on no clothes but his shirt; stood in the door, leaning against the door post a few minutes, and then went to bed, and did not get up till morning."

This is all of the evidence contained in the bill of exceptions.

We may here remark, that the indictment contained three counts, in the first and third of which, McDonald is charged with having inflicted the injuries which caused the death of Gullen, and that the wife of McDonald, and the plaintiff in error, Connaughty, were present, aiding, abetting, and assisting in the murder; and the second count charges Connaughty with having cast, thrown, and pushed Gullen into a certain river, thereby causing his death by drowning; and that McDonald and wife were present, aiding, assisting, and abetting Connaughty in committing the offence.

The charge of the court to the jury was as follows :

JUNE TERM, 1853.

Connaughty
vs.
The State of
Wisconsin. " With respect to one of the prisoners, the testimony is chiefly direct and positive ; with respect to the other, the testimony is chiefly circumstantial. The proof shows beyond question, that on Sunday night, the 15th June, the prisoner McDonald was engaged in violently beating John Gullen, and was assisted by his wife, both in his own house, and outside of it, very near to the door of Connaughty, and that Connaughty at the time was standing in his own door, saying and doing nothing. Again, it is not only the person striking the fatal blow or blows which caused death, who is guilty ; any person who shall counsel, hire, or otherwise procure a murder to be committed, is, by the statute, guilty, equally with the principal offender. No man can innocently stand by and see a murder committed without attempting to prevent it ; great bodily danger, or great fear, might excuse a person from interfering, and it might be a satisfactory explanation, that the bystander did not know the deadly purpose, or did not understand the deadly effect of the blows ; but ordinarily, a bystander should be presumed to understand the effect of great violence, as well as the person who inflicts it. You will apply these general rules and principles to the case of the prisoner Connaughty."

"The evidence is before you, and you will judge what is proved and what is its weight ; this is a general remark applicable to the whole case. If the proof shows, that the blows were inflicted upon Gullen, while Connaughty was standing by, within a few feet of the assailants, and if he did not interfere, or attempt by word or act, to arrest the violence, it is a very strong circumstance against him; it may, of itself, satisfy you of his advising or procuring the

blows to be inflicted ; and it may be taken in connec-

tion with other evidence, with his acts and declarations afterwards, and with all the other facts tending to show his connection with the murder ; and thus all the evidence together may satisfy you of his participation in the crime."

It appears also, that the counsel for the prisoner, Connaughty, requested the court to charge the jury, " that there must also be a participation in the act proved, for although a man may be present while a felony is committed, if he take no part in it, and do not act in concert with those who commit it, he will not be an accessory aiding and abetting, merely because he did not endeavor to prevent the felony, or apprehend the felon ;" which instruction was refused, the court remarking that " such was not the necessary conclusion of law," and referring to the written charge. What this written charge was, if it were not the charge which we find in the bill of exceptions, and which we have above recited, we are not informed.

This is the whole case made out and submitted to us, and from it we conclude that Connaughty was convicted as an aider and abettor of McDonald, and therefore a principal in the second degree.

" When two or more are to be brought to justice for one and the same felony, they are considered in the light either,

" I. Of principals in the first degree :

" II. Principals in the second degree :

" Accessories before the fact ; or,

" Accessories after the fact." And again,

" II. Principals in the second degree, are those who were present *aiding and abetting* at the commission of the fact." (1 *Russ. on Crimes, Chap.* 2, *p.* 29.)

June Term, 1853,

Connaughty vs. The State of Wisconsin. This author, in another place says, "In order to make an abettor to a murder or manslaughter a principal in the felony, he must be present aiding and abetting the fact committed. (1 *Russ. on Cr.* 627.)

"A man may be *principal* in an offence in two degrees. A principal in the first degree, is, he that is the actor, or absolute perpetrator of the crime ; and in the second degree, he who is present aiding and abetting the fact to be done ; which *presence*, need not always be an actual standing by, within sight or hearing of the fact, but there may be also a constructive presence, as when one commits a robbery or murder, and another keeps watch or guard at a convenient distance.'" (4 *Black. Com.* 33 ; *Foster*, 350 ; 1 *Hale's P. C.* 615.)

From these authorities, as well as from all the other writers on criminal law, it is apparent, that a *presence*, either actual or constructive, when coupled with an aiding or abetting, a counselling, inciting, hiring, or in any manner assisting in the commission of a felony, will make a person a principal in the offence, and our Statute (*Cap.* 141, § 1,) declares that "every person, *who shall be aiding* in the commission of any offence which shall be a felony,". shall be punished in like manner with the principal offender. We find this principle of law very correctly set forth in the charge of the court below, but there are other portions of the charge having a relation to this rule of law, which we cannot approve of, or affirm as the law of the land. "No man can innocently stand by and see a murder committed, without attempting to prevent it." * * "Ordinarily a bystander should be presumed to understand the effect of great violence, as well as the prisoner [person] who inflicts it." * * * If the

proof shows that the blows were inflicted upon Gullen

while Connaughty was standing by, within a few feet of the assailants, and if he did not interfere or attempt by word or act to arrest the violence, it is a very strong circumstance against him—*it may of itself satisfy you of his advising or procuring the blows to be inflicted.*"

This is the language of the court in its charge to the jury, but it is not in accordance with the law as we understand it. The promptings of humanity, as well as the duty which one man owes to another, and to the laws under which he lives, demand, that when a person sees great bodily injury being inflicted upon an individual, and the looker on has a means or ability to prevent the injury, he shall use such means, and if he do not, but idly stand by without interfering to prevent the commission of crime, the law will not hold him in any degree guilty of the particular crime committed, although he is by no means guiltless in the eye of the law.

Nor are we aware, that, either as as matter of law or of fact, a person who stands by should be presumed to know the effect of great violence, as well as the person who inflicts it. Every man is presumed to know the effect of his own acts, so that if he strike a blow with a dangerous weapon, which causes death, he will be deemed to have known and intended the effect of the blow; but would this presumption in any way apply to, or affect a beholder? We think not, unless there had been a previous concert or arrangement between the actor and the beholder in relation to the subject.

To render this prisoner, Connaughty, a principal in the second degree, in the murder of Gullen, it was

June Term, 1853.

Connaughty vs. The State of Wisconsin.

necessary to prove to the jury, that he was not only an eye-witness of the infliction of the deadly blows, or present either actually or constructively, but also, that he was "aiding in the commission of the offence"— aiding and abetting the fact committed; that he countenanced or encouraged McDonald in the fact, or had some participation therein.

Mr. Sergeant Hawkins, in his Pleas of the Crown, (2 *vol.* 442, § 10,) says, "Also those who by accident are barely present when a felony is committed, and are passive, and neither any way encourage it, nor endeavor to hinder it, nor to apprehend the offenders, shall neither be adjudged principals nor accessories ; yet if they be of full age, they are highly punishable by .fine and imprisonment for their negligence, both in not endeavoring to prevent the felony, and in not endeavoring to apprehend the offender."

In Russell on Crimes we have have the same rules expressed thus : But a person may be present, and if not aiding and abetting, be neither principal nor accessory ; as if A. happen to be present at a murder, and take no part in it, nor endeavor to prevent it, or to apprehend the murderer; this strange behavior, though highly criminal, will not of itself render him either principal or accessory. (1 *Russ. on Cr.* 627 ; *Foster*, 350.)

"Mere *presence* is not sufficient to constitute the party a principal, without he aids, assists, and abets. Thus, if two are fighting, and a third comes by and looks on, but assists neither, he is not guilty, if homicide ensue." (1 *Hale's P. C.* 439.) So also in Stephens' "Summary of Criminal Law," (*Cap.* 3, *p.* 7,) it is held "The *aiding vnd abetting* must involve some participation. Mere presence without [opposition]

participation, will not suffice, if no act whatever is <span style="font-variant:small-caps">June Term, 1853.</span> done in concert, and no confidence *intentionally* imparted by such presence to the perpetrators." The Connaughty vs. The State of same principle is found in all the writers on criminal Wisconsin. law, and is rigorously adhered to by the courts.

On the trial of Charles Lord Mohun, before the House of Lords, in the year 1692, (12 *Howell's State Trials*, 949, *Case* 371, for the murder of William Mountford, certain questions were submitted to the judges, whose answers distinctly show, what the law on the subject of aiders and abettors in the crime of murder then was, and it has continued to be the same until the present day.

The first question which we will notice was this:

"A., conscious of an animosity between B. and C., A. accompanieth B., where C. happeneth to come, and B. killeth him; whether A., *without any malice* to C., or any actual hand in his death, be guilty of murder?"

The answer of Lord Chief Justice Holt, (concurred in by the other justices,) was, " as this case is stated, I do conceive, that A. is not guilty of the murder, for it appeareth the meeting was casual, and there was no design in A. against C., and therefore, though A. did know of the malice between B. and C., yet it was not unlawful for A. to keep company with B., but he might go with him anywhere, if it was not upon a design against C.

" Therefore, I take it as this case is put, that C. came accidental into the company where A. and B. were, and then without any design in A., B. killeth C. This is not murder; indeed, no offence in A."

Another of the questions propounded was this:

" Whether, if A. heard B. threaten, to kill C., and

June Term,
1853.

Connaughty
vs.
The State of
Wisconsin.

some days after, A. shall be with B. upon some other design, when C. shall pass by, or come in the place where A. and B. are, and C. shall be killed by B., A. *standing by without contributing to the fact*, his sword not being then drawn, or any malice ever appearing on A.'s part against C., whether A. will be guilty of the murder of C?"

And the answer of the Lord Chief Justice was: "My lords: I am of opinion, that A., in this case, will not be guilty of murder or manslaughter, *for it doth not appear by the stating of the case that A. did consent to the design, or in anywise contribute to the fact.*" And all of the judges were of the same opinion.

The only other question submitted to the judges, to which we think proper to refer, was as follows:

"Whether a person knowing of the design of another to lie in wait to assault a third man, who happeneth to be killed (when the person who knew of the design is present,) be guilty, in law, of the same crime with the party who had the design, and killed him, though he had no actual hand in his death?"

To this the same learned judge replied: "My lords: I am of opinion this is no murder, or manslaughter; he that knew of the design of assaulting, *only happened to be present when the assault was made, and the party killed; but if he did not contribute to his death*, he is not guilty of murder, * * * * but if the person that knew of this design, did advise it, or agree to it, or lay in wait for it, or resolved to meet the third person that was killed, with him that killed him, it would be murder; but as this case is put, it is neither murder nor manslaughter." In this opinion also, all the judges concurred.

By comparing the cases stated in these interroga-

tories, with that which is presented by the bill of ex-
ceptions before us, we find that any one of them in-
cludes inculpatory circumstances, not to be found in
this case. No evidence was given, that Connaughty
knew of any unlawful design on the part of McDon-
ald ; indeed, the nature of the case precludes any
such preconcert. A midnight brawl upon the street,
near the dwelling of Connaughty, attracted his at-
tention ; he went to his door, undressed and unarm-
ed, and took no part in the assault upon Gullen by
McDonald ; he did not encourage it, but on the con-
trary, he told McDonald " to go into the house and
not be fighting." Here is nothing to satisfy the mind
that Connaughty " did consent to the design, or in
anywise contribute to the fact," for we find that the
jury were distinctly told, by the court, that " Con-
naughty, at the time, was standing in his own door,
saying and doing nothing."

It is true, the learned judge before whom this case
was tried, submitted the whole facts in the case to
the consideration of the jury. On this subject he
told them that the whole evidence was before them,
and they were to judge what was proved, and what
was the weight of the matters so proved ; but taken
in connection with other parts of the charge, we think
that he erred in laying down the law applicable to
the case of Connaughty, and that the charge, taken
together, was calculated to mislead the jury, as to
the law of the case. The jury were told that " if
he (Connaughty) was standing by, within a few feet
of the assailants, and if he did not interfere or at-
tempt, by word or act, to arrest the violence, it is a
very strong circumstance against him ; it may of it-
self satisfy you of his advising or procuring the blows
to be inflicted."

June Term,
1853.

Connaughty
vs.
The State of
Wisconsin.

Surely, this is not law. Bare presence is not sufficient. It *may not*, and should not satisfy any mind, of a participation in the crime ; but there must be something else shown in the conduct of the bystander, which unmistakeably evinces a design to encourage, incite, approve of, or is some manner, afford aid or consent to the act.

In the case of the King vs. Davis and Hull, (*Russ and R.*, *Cr. C.* 113.) it was held not to be sufficient to make Hull a principal, in uttering a forged note, (which Davis had passed) that he came to the town with Davis, left the hotel with him before the note was passed, joined him again in the street shortly after the passing of the note, and at a short distance from the place where it was passed, and ran away when Davis was apprehended ; and this was because no " concerted purpose was shown."

On the trial of Young and Webber, for the killing of one Mirfin, in a duel, the jury were charged by Mr. Justice Vaughan, that " mere presence alone, will not be sufficient to make a party an aider and abettor, *but it is essential that he should, by his countenance and conduct in the proceedings, being present, aid and assist the principal.*" (8 *Can. & P.* 644.) So in *the Queen vs. Cuddy,* 1 *Car. & Kir.* 210.) Mr. Justice Williams, in summing up to the jury, said : " The question is, whether prisoner was at the spot at the time, *and whether he took such a part* as amounts in the language of this indictment, to an aiding and abetting the principal offender."

These cases and authorities to which we have referred, as well as many others in both the English and American books, satisfy us that the Circuit Court erred in its charge to the jury, so far as it has refer-

ence to the case of this plaintiff in error, and we are also well satisfied, that the instruction asked for by the counsel for Connaughty, and refused by the court, ought to have been given. It was entirely apposite to the case, and was a correct legal proposition, with the exception of the improper use of the word " accessory" instead of " principal in the second degree." An accessory is one in some manner connected with the crime, either before or after the fact, but who was not present at the time, while a principal in the second degree must be present, either actually or constructively. ( *Vide* 4 *Black. Com.* 24–36.) Indeed, it may be found, word for word, with the exception above stated, in *Archibald's Cr. Pl., p.* 4, cited from Hale & Foster.

It is essential to the safety and well-being of society, that there should be, certainty in the administration of the criminal laws, in order that crime may be punished and prevented, and thereby, vice may be deterred and virtue promoted, that, perhaps the most beautiful rule of our criminal law is laid down by Lord Hale, ( *p.* 290,) will be found to be, in most cases, a safe one—*tutius semper est errare in acquitando, quam in puniemdo ex parte miserecordiæ, quam exparte justitiæ.*"

The judgment of the Circuit Court is reversed and a new trial awarded.