712 A.2d 88

Raymont HOPEWELL

v.

STATE of Maryland.

No. 1025, Sept. Term, 1997.

Court of Special Appeals of Maryland.

June 25, 1998.

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Regina Hollins Lewis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Patricia Jessamy, State's Atty. for Baltimore City, on brief), Baltimore, for appellee.

Argued before WENNER, THIEME and BYRNES, JJ.

THIEME, Judge.

Appellant, Raymont Hopewell, a/k/a Michael Bennett, was convicted by a jury in the Circuit Court for Baltimore City (Friedman, J.) of theft over $300 and was sentenced to two years imprisonment. Appellant asks us a single question on appeal: Did the trial court err in refusing to instruct the jury on "mere presence?" We perceive no error. Accordingly, we shall affirm the judgment of the trial court.

The appellant was tried for and convicted of taking several video games that belonged to Danielle Baker. Appellant took the games while a guest in Danielle's home. Two witnesses testified for the State: Danielle, and Mary Baker, Danielle's mother.

Danielle testified that in September of 1996, she lived in a three-story house with her mother and her older half-brother, Calvin Hill. The house was located in the 3800 block of Woodlawn Avenue in Baltimore City. Around 6:30 p.m. on 20 September 1996, Danielle arrived home from basketball practice and found that no one else was home. She put her books down, went to the kitchen to get something to drink, and then went downstairs to the basement to get something. While downstairs, she observed her Super Nintendo games by the television. She then came back upstairs and heard a knock at the front door. Danielle opened the front door and saw the appellant, who was Hill's cousin. The appellant told Danielle that he had just spoken to Hill. During that conversation Hill allegedly told the appellant to meet Hill at his house. Danielle let the appellant in the house and he asked if he could watch television while waiting for Hill. Danielle showed him to the basement and then went to the second floor to gather some clothes to wash.

Danielle further testified that she was upstairs for about five minutes when she heard the house alarm go off. She went down to the first floor and looked out the window, where she saw the appellant riding his bike away from the house. She then went down to the basement and noticed that between eight and nine of her Super Nintendo games were missing.

She testified that each cost about $60.00. She telephoned her mother, who arrived home shortly after the call.

Mary Baker, Danielle's mother, testified that she had received a call from her daughter around 7:00 p.m. that evening and that her daughter was upset. She further testified that Danielle kept several video games downstairs in the basement and that each game cost at least $59.99. During her examination, Mary identified a letter addressed to her from the appellant and postmarked several months after the incident. In that letter, the appellant stated that he was sorry "for taking them things out [sic] your house." He explained in the letter that he was "hungry and tired of living on the streets and I seen an opportunity to get a couple of dollars and I went for it."

Appellant presented no testimonial evidence. After both parties had rested and the court instructed the jury, the following colloquy occurred at the bench:

[DEFENSE COUNSEL]: *Your Honor, I would ask for a mere presence instruction. I don't think you gave that and a circumstantial evidence instruction.*

THE COURT: Well, I'll give circumstantial evidence. I won't give mere presence. Okay.

The court then instructed the jury as follows:

There are two types of evidence, direct and circumstantial. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. No greater degree of certainty is required of circumstantial evidence than of direct evidence. In reaching a verdict, you should weigh all the evidence presented whether direct or circumstantial. You may not convict the Defendant unless you find the evidence, when considered as a whole, established guilt beyond a reasonable doubt.

After the jury was so instructed, the parties made their closing arguments to the jury.

The appellant poses an interesting query on appeal which, on first blush, appears to have at least the potential of some merit to it. When, however, ". . . the day breaks, and the

shadows flee away,"[1] it becomes pellucid that the appellant has undertaken an unwinnable battle. He asks a single question before this Court, that of whether the trial court committed error in refusing to give a jury instruction on "mere presence." Although the issue seems quite simple and straightforward, if we were to agree with the appellant and hold that the instruction should have been given, the ramifications of our holding would indeed be far-reaching and well beyond what the law ever intended.[2] We explain.

## I.  The Historical Roots of the Mere Presence Doctrine

The mere presence doctrine was formally incorporated into this nation's jurisprudence in the mid–1800s. One of the earliest references to the doctrine occurred in *State v. Hildreth*, 31 N.C. 440 (1849), a case in which two individuals were indicted for murder. The Supreme Court of North Carolina, in examining the various instructions given to the jury by the trial court regarding aiding and abetting, explained:

> For one, who is present and sees that a felony is about being committed and does in no manner interfere, does not thereby participate in the felony committed. Every person may, upon such an occasion, interfere to prevent, if he can, the perpetration of so high a crime; but he is not bound to do so at the peril, otherwise, of partaking of the guilt. It is necessary, in order to have that effect, that he should do or say something, shewing his consent to the felonious purpose and contributing to its execution, as an aider and abettor.

31 N.C. at 444. Four years after the decision in *Hildreth*, the Supreme Court of Wisconsin in *Connaughty v. State*, 1 Wis. 159 (1853), engaged in what is probably the most all-encompassing review on the subject to date. As in *Hildreth*, two individuals were indicted for a single murder. The trial court,

---

1. *The Song of Solomon* 2:17, 4:6.

2. Indeed, it seems that neither party to this case quite realizes the extent of what the appellant asks us to do, as is evidenced by the four-page brief submitted by the appellant and the five-page brief submitted by the State.

on instructing the jury as to the law of principals and accessories, declared:

... No man can innocently stand by and see a murder committed without attempting to prevent it ... ordinarily a bystander should be presumed to understand the effect of great violence, as well as the person who inflicts it.

1 Wis. at 162. The Supreme Court of Wisconsin, however, rejected the previous instruction as an inaccurate statement of the law. In citing to a wealth of authority dating back to the early common law, the court explained why the above quoted instruction could not stand:

This is the language of the court in its charge to the jury, but it is not in accordance with the law as we understand it. The promptings of humanity, as well as the duty which one man owes to another, and to the laws under which he lives, demand, that when a person sees great bodily injury being inflicted upon an individual, and the looker on has a means or ability to prevent the injury, he shall use such means, and if he do not, but idly stands by without interfering to prevent the commission of crime, the law will not hold him in any degree guilty of the particular crime committed, although he is by no means guiltless in the eye of the law.

Nor are we aware, that, either as a matter of law or of fact, a person who stands by should be presumed to know the effect of great violence, as well as the person who inflicts it. Every man is presumed to know the effect of his own acts, so that if he struck a blow with a dangerous weapon, which causes death, he will be deemed to have known and intended the effect of the blow; but would this presumption in any way apply to, or affect a beholder? We think not, unless there had been a previous concert or arrangement between the actor and the beholder in relation to the subject.

To render this prisoner, *Connaughty,* a principal in the second degree, in the murder of Gullen, it was necessary to prove to the jury, that he was not only an eye witness of the infliction of the deadly blows, or present either actually or

constructively, but also, that he was "aiding in the commission of the offense"—aiding and abetting the fact committed; that he countenanced or encouraged McDonald in the fact, or had some participation therein.

Mr. Sergeant Hawkins, in his Pleas of the Crown, 2 vol., 442, § 10, says: "Also those who by accident are barely present when a felony is committed, and are passive, and neither any way encouraging it, nor endeavor to hinder it, nor to apprehend the offenders, shall neither be adjudged principals nor accessories; yet if they be of full age, they are highly punishable by fine and imprisonment for their negligence, both in not endeavoring to prevent the felony, and in not endeavoring to apprehend the offender."

In Russell on Crimes, we have the same rule expressed thus: "But a person may be present, and if not aiding and abetting, be neither principal nor accessory; as if A. happened to be present at a murder, and take no part in it, nor endeavor to prevent it, or to apprehend the murderer; this strange behavior, though highly criminal, will not itself render him either principal or accessory." 1 Russ. on Cr., 627, Foster, 350.

"*Mere presence is not sufficient to constitute the party a principal, without he aids, assists, and abets.* Thus, if two are fighting, and a third comes by and looks on, but assists neither, he is not guilty, if homicide ensue." 1 Hale's P.C., 439. So also in Stephens' "Summary of Criminal Law," Cap. 3, p. 7, it is held: "The *aiding and abetting* must involve some participation. *Mere presence without opposition participation, will not suffice,* if no act whatever is done in concert, and no confidence *intentionally* imparted by such presence to the perpetrators." The same principle is found in all the writers on criminal law, and is rigorously adhered to by the courts.

1 Wis. at 165–67 (italics in original; underlining supplied).

Although not as explicit as *Connaughty,* to like effect is *Burrell v. State,* 18 Tex. 713 (1857), in which the Supreme Court of Texas, when confronted with a similar issue, opined:

[I]n order to implicate [the defendant] in the crime, he must have been aware of the intention of his companion to commit it. *His bare presence is not sufficient.* For "although a man be present whilst a felony is committed, if he take no part in it, and do not act in concert with those who committed it, he will not be a principal in the second degree, merely because he did not endeavor to prevent the felony or apprehend the felon." (Roscoe Cr. Ev. 213; Whart. Am. Cr. L. 6364; Whart. L. Homicide, 157.) . . . *His presence was not, of itself, sufficient to inculpate him. It was not, per se, evidence of guilt, or of any force as proof, only as considered with other circumstances conducing to prove his guilt.*

18 Tex. at 732 (emphases supplied); *see also Harper v. State,* 83 Miss. 402, 35 So. 572, 574 (1904) ("It is clearly not the law that a bystander, or one who goes with another upon a lawful mission, or at least without any criminal intent on his part, can be held guilty of murder without affirmative proof of some word or encouragement spoken or overt act committed on his part, evincing a design to participate in the killing."); *State v. Hart,* 186 N.C. 582, 120 S.E. 345 (1923) ("But mere presence, and no more, is not sufficient to make one an aider and abettor"); *People v. Hill,* 77 Cal.App.2d 287, 175 P.2d 45, 49 (1946) ("The mere presence of the accused at the scene of the crime does not necessarily establish his guilt as an abettor.").

Our review of secondary authorities from that time period reveals the same basis underlying the mere presence doctrine as discussed in the previous cases. And, like those cases, the mere presence doctrine is explained in the context of principals and accessories. *See* 1 Francis Wharton, *A Treatise on the Criminal Law of the United States,* § 116, pp. 68–69 (5th ed. 1861)(quoting from *Connaughty v. State, supra,* in section entitled "Principals in the Second Degree"); Francis Wharton, *Treatise on the Law of Homicide in the United States,* ch. VIII p. 157 (1855) ("Although a man be present whilst a felony is committed, if he take no part in it, and do not act in concert with those who commit it, he will not be a principal in the second degree, merely because he did not endeavour to pre-

vent the felony, or apprehend the felon.") (included in section entitled "Principals in the second degree"); 1 Emilin McClain, *A Treatise on Criminal Law*, § 194, pp. 154–55 (1897) ("Proof that one has stood by at the commission of a crime, without taking any steps to prevent it, does not alone indicate such participation or combination in the wrong done as to show criminal liability . . . [but] mere presence is a fact to go to the jury in connection with other facts in the case as tending to show participation.") (included in chapter entitled "Combinations; Principal and Accessory").

The Supreme Court made its first mention of the mere presence doctrine in 1893. In *Hicks v. United States*, 150 U.S. 442, 14 S.Ct. 144, 37 L.Ed. 1137, John Hicks along with Stand Rowe [3] were jointly indicted for the murder of Andrew Colvard. The evidence at trial was undisputed that Rowe, and not Hicks, fired the fatal bullet into the chest of the deceased. 150 U.S. at 446, 14 S.Ct. at 145. At the close of Hicks's case, the trial court instructed the jury on the general law of accomplice liability, and, in part, explained:

"[I]f Hicks was actually present at that place at the time of the firing by Stand Rowe, and he was there for the purpose of either aiding, abetting, advising, or encouraging the shooting of Andrew J. Colvard by Stand Rowe, and that, as a matter of fact, he did not do it, but was present for the purpose of aiding or abetting or advising or encouraging his shooting, but he did not do it because it was not necessary, it was done without his assistance, the law says there is a third condition where guilt is fastened to his act in that regard."

150 U.S. at 449–50, 14 S.Ct. at 146–47. In finding reversible error in the instruction, the Supreme Court explained that, given the specific language of the trial court,

[t]he jury might well, therefore, have thought that they were following the court's instructions, in finding the ac-

---

3. Apparently, Rowe's case never came to trial, as he was killed by police officers while they were attempting to arrest him. *See* 150 U.S. at 444, 14 S.Ct. at 144–45.

cused guilty because he was present at the time and place of the murder, although he contributed neither by word or action to the crime, and although there was no substantial evidence of any conspiracy or prior arrangement between him and Rowe.

150 U.S. at 450, 14 S.Ct. at 147.[4]

Although Maryland made no mention of the mere presence doctrine in its case law until much later (*see* section II, *infra* ), it did recognize the validity of the doctrine as early as 1897. In *The Law of Crimes and Criminal Procedure*, § 26, p. 16 (1st ed. 1897), Lewis Hochheimer, citing to the Supreme Court's decision in *Hicks, supra,* wrote: "Mere presence at the commission of a crime does not involve guilt, but is a fact relevant in evidence to the question of guilt." (Footnotes omitted.) Hochheimer's discussion on the subject was unsurprisingly included amidst a section entitled "accomplices." Less than ten years later and again in the context of a discussion on accomplices, Hochheimer wrote:

In order to render one liable as an accomplice, there must be an actual participation in the offense. One who only apparently participates, *e.g.,* to entrap or detect another, is not an accomplice. *Without concert of action or community of purpose existing at the time of the commission of an offense, no liability for the action of others attaches to persons merely present.*

Lewis Hochheimer, *The Law of Crimes and Criminal Procedure*, § 19, p. 37 (2nd ed.1904) (footnotes omitted; emphasis supplied).

■ The glaring similarity that we cannot overlook from the aforementioned authorities is that, in each instance, the

---

4. Interestingly, in *Hicks* the trial court did instruct the jury that "if at the time that Andrew J. Colvard was shot by Stand Rowe, the defendant was present at that time and the place of the shooting, that, of course, would not alone make him guilty—the mere fact that he was present." 150 U.S. at 447–48, 14 S.Ct. at 146. The Supreme Court made no mention of that portion of the trial court's instructions in its opinion, and presumably found that that instruction was not enough to counterbalance any subsequent error committed by the trial judge.

discussion of the mere presence doctrine is in the context of principals and accessories. Whether by the Supreme Court of the United States, by a highest appellate state tribunal, or by the leading authors of that time, the mere presence doctrine is inextricably intertwined with accomplice liability. Thus, we cannot help but draw the conclusion that, historically, the mere presence doctrine applied *only* to circumstances in which more than one individual was implicated for an offense. The question still remains, however, as to whether that presumption holds equally true today. The answer, as we shall see, is yes.

## II.  The Mere Presence Doctrine in Modern Times

Maryland has had little to say about the mere presence doctrine since its first mention by Hochheimer over a century ago. In fact, the doctrine was not even discussed by our appellate tribunals until almost sixty years after Hochheimer cited the Supreme Court's decision in *Hicks*. *Watson v. State*, 208 Md. 210, 117 A.2d 549 (1955), was the first time that the concept of mere presence was formally introduced in our case law. In that case, Watson, along with Bernice Washington, was indicted for the murder of Washington's newborn child. Another individual, Polly Conway, witnessed Watson place the newborn infant into a tub of water and drown the infant. Ms. Conway testified at trial that the infant was alive when placed in the tub of water. On appeal, Watson alleged that Ms. Conway's testimony should have been excluded at trial because, according to Watson, Ms. Conway was Watson's accomplice and an accused may not be convicted on the uncorroborated testimony of an accomplice. 208 Md. at 216–18, 117 A.2d 549.

After discussing in detail the law as related to principals and accessories, the Court of Appeals had this to say:

Polly admitted that she made no objection when appellant placed the baby in the tub of water, and that she did not notify the police. *But the fact that a person witnesses a crime and makes no objection to its commission and does not notify the police does not make him an accomplice.* To

be an accomplice a person must participate in the commission of a crime knowingly, voluntarily, and with common criminal intent with the principal offender, or must in some way advocate or encourage the commission of the crime.

208 Md. at 219, 117 A.2d 549 (emphasis supplied).

Probably the most detailed explanation of mere presence offered by our appellate courts occurred only five years after the Court of Appeals decision in *Watson*. In *Tasco v. State*, 223 Md. 503, 165 A.2d 456 (1960), *cert. denied*, 365 U.S. 885, 81 S.Ct. 1036, 6 L.Ed.2d 195 (1961), Judge Prescott, writing for the Court, cited to *Watson* and explained:

> Of course, it is elementary that the mere presence of a person at the scene of a crime is not, *of itself,* sufficient to establish that that person was either a principal or an accessory to the crime. *Watson v. State,* 208 Md. 210, 117 A.2d 549 [1955]; *Judy v. State,* 218 Md. 168, 146 A.2d 29 [1958]. But presence at the immediate and exact spot where a crime is in the process of being committed is a very important factor to be considered in determining guilt[.]

*Id.* at 509, 165 A.2d 456 (emphasis in original). Thus, in *Watson* the concept of mere presence was incorporated into Maryland case law, and soon thereafter, in *Tasco,* the Court of Appeals coined the language that our appellate courts have cited without hesitation or elaboration ever since. *See, e.g., Taylor v. State,* 346 Md. 452, 459–60, 697 A.2d 462 (1997); *Wilson v. State,* 319 Md. 530, 537–38, 573 A.2d 831 (1990); *Bruce v. State,* 318 Md. 706, 731, 569 A.2d 1254 (1990); *Jones v. State,* 242 Md. 323, 326–27, 219 A.2d 77 (1966); *Richardson v. State,* 63 Md.App. 324, 333–34, 492 A.2d 932, *cert. denied,* 304 Md. 300, 498 A.2d 1186 (1985); *Todd v. State,* 26 Md.App. 583, 585, 338 A.2d 350 (1975); *In re Appeal No. 504,* 24 Md.App. 715, 724, 332 A.2d 698 (1975); *McDuffie v. State,* 10 Md.App. 190, 193, 268 A.2d 590 (1970); *Chavis v. State,* 3 Md.App. 179, 181–82, 238 A.2d 151 (1968).

Throughout the thirty-some cases that have mentioned the mere presence doctrine since the Court of Appeals decision in

*Watson,* every case but two [5] dealt with a situation in which more than one individual was implicated for an offense. As in the cases we have cited that were decided well over a century ago, Maryland case law has continued to maintain the principle that the mere presence doctrine applies only to situations in which multiple persons are alleged to have committed an offense.

Our review of more recent secondary authorities similarly uncovers no significant elaboration of the mere presence doctrine and no departure from the association of the mere presence doctrine with accomplice liability. LaFave and Scott say only that "[q]uite clearly, mere presence at the scene of the crime is not enough [to render one an accomplice], nor is mental approval in the actor's conduct." 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law,* § 6.7 p. 136 (1986). Torcia declares that "a person's mere presence at the time and place of the commission of a crime, or his knowledge that a crime is being committed or is about to be committed, without more, does not make him an accomplice." 1 Charles E. Torcia, *Wharton's Criminal Law,* § 38 pp. 225–26 (15th ed.1993) (footnote omitted). Similarly, Perkins and Boyce explain that "presence at the scene of an offense is not itself sufficient to constitute any sort of criminal guilt. Obviously a terrified onlooker is not to be punished for his mere misfortune in having been present at the commission of a felony." Rollin M. Perkins & Ronald N. Boyce, *Criminal Law,* ch. 6 pp. 741–42 (3d ed.1982) (footnotes omitted).

Quite obviously, modern authorities explain the mere presence doctrine in much *less* detail than their historical counterparts. Maryland, as well, offers no particular guidance on the concept. Thus, having examined the current-day leading authorities on criminal law, we are left none the wiser than when we first began our endeavor. Nevertheless, what may be learned from the preceding authorities is that the concept of mere presence has arguably been developed in order to pro-

---

**5.** *See Wilson v. State, supra,* and *Prior v. State,* 10 Md.App. 161, 268 A.2d 563 (1970).

tect a defendant from what is in common terms referred to as "guilt by association." That is, an individual should not be condemned merely because of the company he keeps and because he may have been at the wrong place at the wrong time.

### III. A Synthesis of the Historical Law with the Modern Law

After a close examination of the mere presence doctrine as it has been defined by the law for countless decades, we are of the opinion that firmly established precedent (not to mention logic) dictates that the mere presence doctrine is a concept related only to accomplice liability. For simplification purposes, an instruction on mere presence could be reduced to the following sentence, as if uttered by the defendant himself:

*I* was there, but *I* didn't do it; *he* did it.

To the contrary, the mere presence doctrine does not apply to situations in which the defendant merely utters the following:

*I* was there, but *I* didn't do it.

In the former sentence, the defendant clearly places the blame upon someone other than himself, whether that someone was an alleged coconspirator or merely another individual who, as is established by the evidence, was present and may have taken part in the alleged offense. In the latter sentence, however, the defendant merely engages in a denial of guilt, or, stating its antithesis, a maintenance of innocence. The latter sentence lacks the implication that is crucial to the giving of a mere presence instruction—the implication that another or others were involved in the alleged offense.

### The Case at Hand

■ Turning to the case now before us, the appellant requested that the trial court instruct the jury on mere presence.[6] The trial court refused, and rightly so, because

---

6. The Maryland Criminal Pattern Jury Instruction reads:

that instruction had absolutely no applicability to the instant case. The appellant did not dispute that he was present at the Bakers' house on the evening in question. Nevertheless, he offered no evidence at trial that someone else may have taken the missing video games.[7] As we see it, an instruction on mere presence would have informed the jury of nothing more than that the State had to prove every element of its case beyond a reasonable doubt, one of those elements being the criminal agency of the appellant.

Although this state has never before said as much, other jurisdictions provide some guidance as to the previously enunciated principle. For example, in its recent decision of *Key v. State*, 226 Ga.App. 240, 485 S.E.2d 804, 808 (1997), the Court of Appeals of Georgia declared: "[T]he rule that mere presence without more is insufficient to convict is really a corollary to the requirement that the State prove each element of the offense charged." (Internal quotations omitted.) The court in *Key* cited to an earlier decision of *Muhammad v. State*, 243 Ga. 404, 254 S.E.2d 356 (1979), in which the Supreme Court of Georgia explained:

> Mere presence at the scene of the crime is not a recognized defense to a criminal charge. Rather, the rule that mere presence without more is insufficient to convict is really a corollary to the requirement that the state prove each element of the offense charged.

---

A person's presence at the scene of a crime, without more, is not enough to prove that the person committed a crime. The fact that a person witnessed a crime, made no objection or did not notify the police does not make that person guilty of a crime. However, a person's presence at the time and place of the crime is a fact in determining whether the defendant is guilty or not guilty.
MPJI–Cr. 3:25.

**7.** Defense counsel did ask both State's witnesses on cross-examination who had keys to their house, and counsel further commented during closing arguments that several people had access to the house and doors may have been unlocked so to permit entry by someone other than the appellant. But, we hardly equate those fleeting references with a theory of accomplice liability.

In the present case, the trial court correctly instructed the jury on the duty of the state to prove each and every element of the crime beyond a reasonable doubt. The trial court further instructed the jury that to warrant a conviction on circumstantial evidence, the proven facts must exclude every reasonable hypothesis save that of guilt. In addition, the trial court instructed the jury that if all the evidence and circumstances of the case and all reasonable deductions therefrom present two theories, one of innocence and one of guilt, the jury must acquit.

The foregoing jury charges were full and fair and, in view of them, the trial court's refusal to instruct the jury on the "mere presence" of the accused at the scene of the crime did not constitute reversible error under the facts of this case.

254 S.E.2d at 358; *see also Garner v. State,* 199 Ga.App. 468, 405 S.E.2d 299, 300 (1991) (instructions regarding the presumption of innocence and State's burden to prove each element of offense beyond a reasonable doubt were adequate and mere presence instruction not required); *Mattox v. State,* 196 Ga.App. 64, 395 S.E.2d 288, 290–91 (1990); *Cox v. State,* 843 S.W.2d 750, 757–58 (Tex.App.1992) (instruction on mere presence unwarranted where defense theory merely negates an element of the offense); *Parker v. State,* 713 S.W.2d 386, 389–90 (Tex.App.1986) (same); *State v. Nefstad,* 309 Or. 523, 789 P.2d 1326, 1343–44 (1990), *denial of habeas corpus aff'd by Nefstad v. Baldwin,* 66 F.3d 335 (9th Cir.1995), and *cert. denied,* 516 U.S. 1081, 116 S.Ct. 793, 133 L.Ed.2d 742

A mere presence instruction in the case at bar would not only have been inapplicable, but redundant as well. The trial court instructed the jury as to the appellant's presumption of innocence, the State's requirement to prove each and every element beyond a reasonable doubt, and as to each element of theft. Thus, the instructions as a whole adequately covered any theory that the appellant was present but, nevertheless, not the criminal agent. *See Bruce v. State,* 318 Md. 706, 731–32, 569 A.2d 1254 (1990). We said at the outset that if we were to agree with the appellant that a mere presence instruction should have been given, the implications of our holding

222

would be far-reaching. What we meant by our statement was that, given the appellant's position, a defendant would be entitled to a mere presence instruction in *every* criminal case. Such a requirement would be absurd and is surely not what was intended.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**